15199

NEESE v. TOMS *ET AL.*

(12 S. E. (2d), 859)

*Mr. C. B. Pearce,* for appellants,

*Messrs. Thomas P. Bussey, J. C. Long* and *Brantly Seymour,* for respondent,

January 13, 1941.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE L. D. LIDE.

This case arose out of an automobile collision which occurred on the morning of October 9, 1938, at about 1:15 a. m., at the intersection of Ashley Avenue and Beaufain Street in the City of Charleston. The plaintiff, Margaret Neese, a young lady then eighteen years of age, sustained serious injuries as a result of the collision, and this action was brought in her name by her guardian *ad litem,* the complaint alleging actionable negligence and willfulness, but since the verdict of the jury was for actual damages only we may eliminate willfulness from consideration. The automobile in which the plaintiff was riding was being driven by her escort, Otis S. Skipper, a young man residing in Charleston, who with the plaintiff was returning from a dance which they had attended together, she having attended as a singer with the orchestra. This automobile which Skipper was driving was owned by A. O. Neese, father of the plaintiff, and had been loaned by him

to Skipper for this occasion. The defendant automobile was owned by Mrs. Meta Toms, and the same was being driven by her daughter, the defendant Mrs. Sophie Bude; and Mrs. Toms was in the car at the time of the collision with the Neese car.

The Toms automobile was being driven north on Ashley Avenue, the same being a street running north and south, designated under the traffic ordinances of the City of Charleston as an express avenue. It appears that an express avenue means a street at which automobiles crossing from intersecting streets must come to a complete stop before proceeding across the same, and automobiles traveling on express avenues have the right-of-way over automobiles entering thereon from side streets. The Neese automobile was proceeding east on Beaufain Street and was crossing Ashley Avenue at the time of the collision. Under the ordinances of the city the speed limit on Ashley Avenue was 25 miles an hour and on Beaufain Street 10 miles. Both automobiles were wrecked by the collision, and all of the occupants were more or less injured.

This action was tried before Hon. Samuel L. Prince, Special Judge, and a jury, at the April, 1940, term of the Court of Common Pleas for Charleston County. During the course of the trial timely motions were made by the defendants for a nonsuit and a directed verdict, but the same were refused and the cause submitted to the jury under a very excellent and comprehensive charge by the presiding Judge, to which charge no exceptions have been taken. The verdict was in favor of the plaintiff for actual damages in the sum of $10,000.00. A motion for a new trial made by defendants was heard by the trial Judge, who after due consideration thereof denied the same. Hence, this appeal was taken.

There are nine exceptions, which charge error in the refusal of a nonsuit and a directed verdict, and also in denying the motion for a new trial on the ground that the verdict was not supported by the evidence; in the admission of cer-

tain testimony; and in refusing the motion for a new trial on the ground that the verdict was excessive and was founded on passion, prejudice, or some other improper motive. One of the exceptions also charges error in that a verdict was found against both personal defendants, whereas, it is alleged there was no evidence establishing the agency of the driver of the defendant automobile.

Upon a careful review of the testimony, we. are of opinion that this was a typical automobile collision case in which the issues of negligence and contributory negligence were necessarily submitted to the jury by the Court. There were no eyewitnesses to the accident except the occupants of the two cars, and the testimony of the driver of the Neese car, corroborated by. the plaintiff, is explicit that before he entered Ashley Avenue from Beaufain Street he brought the car to a complete stop and changed his gears; that he looked both ways for cars approaching on Ashley Avenue and saw none; that looking south on Ashley Avenue he could see for probably 150 to 200 feet, and that there was no car approaching within that distance when he started across the avenue; that opposite a hospital on Ashley Avenue a short distance below the intersection "they were digging up the street, and had red and white lanterns there and a barricade"; the barricade being about four feet high. He further said that when he had proceeded over the intersection to a point where the rear end of his car was about midway of the avenue the same was suddenly struck by the defendant car, without warning, and driven into a fence. The plaintiff sustained a fractured skull and other grievous injuries, and was rendered unconscious for a considerable period of time. She was taken to the nearby hospital for treatment, and the record is replete as to the extent of her wounds and illness, and the resulting damage to her. There was also evidence in behalf of plaintiff by some witnesses other than Skipper or herself tending to show that the defendant automobile was being driven shortly before the collision at an excessive rate of speed.

The foregoing meager statement of some of the evidence offered in behalf of the plaintiff is sufficient to show that manifestly a nonsuit could not have been granted.

On the other hand, the defendants offered testimony tending to show that they were without negligence and also tending to show that plaintiff and the driver of the car in which she was riding were guilty of negligence. But, the serious conflicts in the evidence as to just what occurred at and before the collision and the varying inferences which are sought to be drawn from the physical facts and surrounding circumstances could not be resolved by the trial Judge, but were properly submitted to the jury as the fact-finding body. For instance, it was testified by Mrs. Bude, the driver of the defendant car, that she was driving north on Ashley Avenue around 25 miles an hour, as she had never been a fast driver, and that she noticed the barricade on the avenue, whereupon she slowed down considerably for it; that when she reached the intersection of Ashley Avenue and Beaufain Street she was going very slowly; that her speed "was much under 25 miles an hour"; that as she approached the intersection she looked to see if there was an automobile there but did not see any and that she had no notice "that there was any automobile around, until I heard my mother scream," when the crash came. Her mother, Mrs. Toms, entirely corroborated her testimony, stating that they were not going over 25 miles an hour, and that the barricade in the avenue caused them to slow up quite considerably, and that as they approached the intersection it was clear and they saw no automobile. She further said: "We were coming along on our side of the street, I remember well, and just like a second, I saw the lights and I screamed, and then the crash."

There was much testimony as to the condition and position of the respective automobiles, and photographs and plats were introduced in evidence, but we do not deem it necessary to go into further detail as to the evidence, for it appears quite obvious that the many sharp

conflicts could only be resolved by the jury. And there was unquestionably a rational basis in the evidence for the conclusion of the jury that the collision was chargeable to the defendants, in that they were actionably negligent, at least with regard to the speed of their automobile, and with reference to having the same under proper control and keeping a proper lookout; and further, it could not be said that the only reasonable inference to be drawn from the evidence was that either the plaintiff or the driver, Skipper, was guilty of contributory negligence; and hence the Court committed no error in refusing the motion for a directed verdict. In this connection, it seems scarcely necessary to call attention to the familiar formula that in considering a motion of this kind the testimony must be viewed in the most favorable light to the plaintiff, *Bingham v. Powell,* 195 S. C., 238, 11 S. E. (2d), 275.

Counsel for the appellants devotes considerable argument to the proposition that the plaintiff and Mr. Skipper, the driver of the Neese car, were engaged in a joint enterprise under such circumstances that any negligence of the driver must be imputed to the plaintiff, and that no other reasonable inference can be drawn from the testimony. But even if we should assume this to be correct, it by no means follows that the defendants would have been entitled to a nonsuit or a directed verdict in their favor because the evidence in behalf of plaintiff tends to show that the driver of the Neese car was not guilty of negligence or contributory negligence. Certainly a nonsuit could not have been granted, nor could a verdict have been directed for the defendants, under the doctrine of imputed negligence, unless the evidence conclusively showed that the driver was in fact negligent. Before negligence can be imputed it must be shown to exist. No exception was taken to the charge of the presiding Judge on the subject of imputed negligence; and, indeed, it appears from the record that he charged the request on this phase of the case submitted by counsel for the defendants. In fact, as we have already stated, the ex-

ceptions do not question the correctness of the charge in any particular.

The point is made in the fifth exception that the verdict was improper, in that there was no testimony whatever in the case establishing the agency of Mrs. Sophie Bude in the operation of the automobile owned by Mrs. Toms. A careful reading of the motion for a nonsuit, the motion for a directed verdict, and the motion for a new trial, will show that this point was not made in any of these motions, nor does it appear to have been raised at any time during the trial. The presiding Judge, however, carefully instructed the jury in substance that Mrs. Toms could not be held responsible if the driver was not, and that if they concluded the driver was responsible they would have to go a step further and determine whether the driver was acting as the agent or servant of Mrs. Toms. The instructions along this line went into detail and no complaint is, or could be, made that the law was not correctly charged.

In view of the fact that the point was not raised in the Court below, it is really not before us for consideration. At the same time, we may say that if this were waived, we would still be of opinion that this exception should be overruled. We agree that the mere presence of the owner in an automobile while it is being driven in a negligent manner by another does not necessarily indicate liability. Nor does the mere fact of the relationship of mother and daughter create an agency involving liability. But the question of agency is to be determined from all the facts and circumstances in the case; and the presence of Mrs. Toms in the car, together with the other circumstances disclosed by the evidence, was in our opinion quite sufficient to warrant the jury in concluding that Mrs. Bude was acting as her agent. We think the rule as to the owner's presence in the car is very well stated in the annotation found in 80 A. L. R., 286, to the effect that while the mere presence of the owner does not necessarily render him liable, yet "the owner's presence is an important element where recovery is

sought on the theory that the driver was acting as his servant or agent, or that he had control over its operation, as an inference that the car was being driven by his agent, or that he had control over its operation, is furthered by such presence."

The exceptions relating to the admission of evidence are we think clearly without merit. The charge is made that the testimony of the witness, Buchanan, who testified that he examined a wrecked Plymouth automobile at the garage where the defendant car was stored, should have been excluded, because the evidence was insufficient to show that the car Buchanan examined was in fact the defendant car. When shown the photographs of the automobile in question he frankly stated that he was not positive that it was the same car, although it looked like it (Transcript, folio 618). But there was definite testimony that the Plymouth car in question was at this garage, and the Court said: "Gentlemen, there was some testimony by Mr. Daniels yesterday as to the condition of the car. I am going to let this witness testify what he found on this car that he examined, and whether that is this car or not will be a question for the jury."

We believe the conclusion of the trial Judge was correct; and moreover the testimony of the witness, Buchanan, as to the condition of the car was cumulative, and if the Court was in error in admitting it, such an error was really harmless. *Holder v. Sovereign Camp, W. O. W.*, 180 S. C., 242, 185 S. E., 547.

The defendants also complain in regard to the cross examination of R. L. Daniels, one of their witnesses. This cross examination appears to have the purpose of showing that the automobile service concern by which the witness was employed had a car painted in a color similar to that of the police cruisers of the City of Charleston; and that the witness wore a badge "known as the insignia" of this automobile service concern which bore some similarity to a police badge; and objection was made by counsel for de-

fendants to questions along this line, but the presiding Judge, although he expressed doubt as to materiality, allowed the questions, until the following occurred in the course of the examination:

"Q. Isn't it true that you bedeck yourself with that badge, and you have that automobile similar to the police cruisers, to represent yourself as being connected with the police department?

"Mr. Pearce: We object to that, your Honor.

"A. It isn't true.

"The Court: The witness said he had no connection with the automobile. It would be my ruling that reference to that automobile would have to be left out."

Counsel for appellants says in his brief that while the Court ruled that reference to the automobile would have to be left out, the jury was not told to disregard the testimony which had already been given and admitted over objection. But it occurs to us that the trial Judge exercised his discretionary power with reference to the admission of the testimony rather favorably to the defendants and that the scope of cross examination might have been held broad enough to allow the final question which in effect was excluded by the Court. And certainly if the defendants desired the Court to go further than he did and specifically instruct the jury thereabout, a request to that effect should have been made.

The last question for our consideration, briefly stated, is: Was the verdict excessive under the evidence?

It is indeed true that a verdict for actual damages in the sum of $10,000.00 is quite substantial. But it was certainly not sufficient in this case to warrant the inference that it was the result of caprice, passion, prejudice, or other considerations not found in the evidence. Counsel for appellants in his very earnest argument suggests that there should be some limit to the prerogative of the jury in the matter of assessing damages, but there is such a limit; for it is elementary that the trial Judge, familiar with the

evidence as it came from the mouths of the witnesses in his hearing may and should determine in his sound discretion whether or not a verdict is excessive; subject to review by this Court for an abuse of discretion, the phrase "abuse of discretion" being of course used in its technical sense. *Steele v. Atlantic C. L. R. Co.,* 103 S. C., 102, 87 S. E., 639; *Cummings v. Tweed,* 195 S. C., 173, 10 S. E. (2d), 322. But we find no such abuse of discretion here. Indeed, the following statement from the order of Judge Prince refusing a new trial is sustained by the record, and has our full approval: "The injury to the plaintiff was substantial and painful and consisted chiefly of a fractured skull, broken into a number of parts on the right side, with the fractures exposed to the air and to view. The plaintiff, after two years, has not been able to get back to her apparent normal weight, suffers regularly from severe headaches that last a day or more each time, finds the right side of her skull where the fractures occurred to be uncommonly sensitive, and from time to time has slivers of bone to work themselves out through her scalp. Though we might speculate as to what lesser verdict some other jury might have rendered, nevertheless, I cannot say that the amount of the verdict so rendered by the jury trying the case was other than what this jury in a conscientious discharge of its duties felt was the true measure of damages."

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE STUKES did not participate in the consideration or decision of this case.