15900

BALLENGER v. SOUTHERN WORSTED CORPORATION
*ET AL.*

(40 S. E. (2d), 681)

464

*Mr. Stephen Nettles,* of Greenville, for Appellants. *Messrs. Culbertson & Brown,* of Greenville, for Respondent,

December 16, 1946.

Mr. Associate Justice Stukes delivered the unamious opinion of the Court.

This appeal is from an award of workmen's compensation by the Industrial Commission (affirmed by the Circuit Court) upon the sole ground of the alleged lack of evidence of causal connection between the accident and the injury. Claimant was about his duties as an employee of the appellant, Southern Worsted Corporation, when the contents of a dye kettle, over which he was working, erupted, and the hot liquid went over his upper body, including his face and eyes; more got into his left eye than his right. The kettle was not boiling, but near it, about 190° F.

The injured employee was taken immediately to a hospital where he was kept only an hour or so and there is no medical evidence of his condition at that time or the nature of the treatment. He remained at home four days and then returned to work. Declining to accept settlement based upon inability to work and earn during this short period, he filed claim for compensation on account of a contended permanent injury to his eye. The employer sent him for examination to an eye specialist of its choice who testified fully as to the results of his examination, which was some six or seven weeks after the accident. He found an astigmatism in the left eye and seriously impaired vision from inability of the eye to properly focus. He also described the defect as refractive error, a condition of farsightedness, also called eyestrain. The witness saw no ill effects of the accident which he said might or might not permanently affect the eye, but he saw no bad result or any condition which he thought could not be restored to normal by the use of properly fitted glasses, the left eye being about fifty per cent. weaker than the right eye; further that eyestrain causes the eyes to burn and water.

The doctor was of opinion that if claimant first complained of the symptoms of eyestrain after the accident it might be because he paid more attention to the eye afterward on account of the accident and thereby discovered the defect which he had not noticed before, and because eyestrain and astigmatism can cause watering of the eyes.

The respondent depended upon his own testimony and that of his wife to establish that the accident caused his disability. He was forty-two years old at the time of the hearing and had been married almost twenty-five years. He and his wife testified to the effect that he was in good health and had no noticeable defect in vision, watering or anything else wrong with his eyes before the hot dye entered them, that he could before read all that he wanted to, and never used glasses and was conscious of no defect in his eyes or vision. He also testified to the loss after the accident of considera-

ble weight and physical strength and that the employer had put him upon lighter work after his return to his job, but his wages are the same. On the eve of the hearing he consulted another doctor who also told him that he needed glasses.

Appellants' single exception is to the effect that the evidence fails to show that the defective eye condition of claimant resulted from the accident and reliance is had upon the rule that claimant's burden of proof included the burden of showing by the evidence and inferences that the accident caused the disability. There can be no dispute about the latter concept. 71 C. J., 636, 637, 1062, 1115. South Carolina decisions in 34 S. E. D., 2-770, Workmen's Compensation, keys 1357 *et seq.*

The attack upon the finding of cause by the Commission is largely that their conclusion was induced by the fallacy commonly called *post hoc, ergo propter hoc,* which is defined by Webster as follows: "After this, therefore on account of it, the fallacy of arguing from mere temporal sequence to cause and effect relationship". But here there is more than mere temporal sequence. There is the testimony of claimant, corroborated by his wife. Appellants' interesting argument also includes quotations from textbooks on logic, apparently overlooking that the proximate cause of the law is not necessarily the proximate cause of the logician. Legal proximate cause is determined upon mixed considerations of logic, common sense and experience, policy, and precedent. 38 Am. Jur., 701. Moreover, our problem is not to discover and apply the rules of logic or law to the evidential facts, for the Court is not the fact-finding body in compensation cases. The factual findings of the Commission are expressly binding upon us and the Circuit Courts, under the compensation law itself, and as established in a long line of cases from this Court. Our sphere in such a contest is only to determine whether there was any evidence before the Commission which tended to sustain its conclusion of fact; without such a foundation in the rec-

ord, the conclusion would be invalid as a matter of law, with the resulting duty upon us to reverse.

The evidence in this case is undoubtedly scant and short of satisfactory. The claimant should have at least attempted to adduce more, but there was some which sustained the Commission's conclusion. *"Post Hoc"* is some in itself. Its existence here is uncontradicted. It cannot be fairly considered without keeping in mind the coincidence of the accident. There was no eye defect before the accident occurred; the very hot liquid chemical was injected into the eye; directly afterward there is the admitted, seriously defective condition. Is it unreasonable or contrary to common sense to infer that they were concatenated, that the one was the cause and the other the effect? We do not think so; rather, we think the deduction consonant with common sense and reason. The expert, opinion evidence is to the contrary, but it cannot remove the facts of the accident and the subsequent injury. Whether it was also consequent is the question and the fact that it immediately followed tends to show that it was. Medical testimony should not be held to be conclusive, irrespective of other evidence; and it is not, under the decisions of this Court. *Moyle v. Mutual Life Insurance Company,* 201 S. C., 146, 21 S. E. (2d), 561. There is an interesting discussion of expert or medical testimony in compensation cases in 71 C. J., 1117, *et seq.* We think that here the injury was so naturally and directly connected with the accident that proof of causality does not depend upon expert evidence. 71 C. J., 1118.

Appellants' presentation of their argument upon the testimony is very strong, but is a little short of convincing; and, as already indicated, insofar as it relates to the weight of the evidence it is not properly addressed to this Court and we cannot allow it to persuade us of the propriety of reversal without our invading the province of the Commission, the statutory finders of the facts. Section 7035-63, Code of 1942. It matters not that we may have concluded differently from the Commission upon the conflicting evi-

dence. It was their responsibility which cannot be shifted to us under the law, even by their error, so long as they have a leg in the evidence to stand upon.

The award was affirmed on appeal to the lower court upon the authority of the recent decision of *Poston v. Southeastern Construction Company,* 208 S. C., 35, 36 S. E. (2d), 858, the facts in which were very similar. The parallel of it is demonstrated by the respective arguments of the present contestants, who undertake to find differences favorable to each of them, respectively. There the award was affirmed upon the testimony of claimant of the injurious effect upon his vision of the accidental injection of foreign matter into his eyes, as here, despite the contrary evidence of the examining physician. It is common knowledge that even experts sometimes err. Reference may be had to the citations in the opinion in *Poston's case* for they are equally apposite in this.

Eye injury cases are often difficult in the administration of workmen's compensation laws. Citations of many are found in the footnotes in 71 C. J., pages 1102, 1104, and 1111. A case in which opinion testimony of eye specialists was overcome by other evidence is *Continental Casualty C⟨ . v. Bennett* (Ga. 1943), 26 S. E. (2d), 682. Illustrative of cases where the absence of expert opinion evidence was held not fatal to claimants' contentions is *Dell v. State Fund* (Pa.), 179 A., 889, wherein the syllabus is: "Referee's conclusion that cause of miner's loss of vision in one eye was accident in which he was struck in eye with piece of coal held justified, even in entire absence of medical opinion, where miner was able to work and had no trouble with eye prior to accident, after injury there was continual pain and gradual loss of vision, and defective condition appeared within usual time following such injury, and claimant suffered no other eye injury and had no disease which would cause loss of sight". The Court said: "The claimant was able to work and had no trouble with his right eye prior to the accident and the resultant injury. After the injury

there was continual pain and gradual loss of vision, and the defective condition appeared within the usual time following such injury. The claimant suffered no other eye injury and had no disease thereof which causes loss of sight. We think the facts of the case show that the claimant's loss of vision in his right eye is the natural and probable result of the accident; and the fact-finding body may be permitted to so find, even in the entire absence of expert opinion".

Like in the Georgia case cited above the court permitted an award to stand despite contrary expert testimony in *Raina v. Standard Gaslight Co.,* 183 N. Y. S., 264. The syllabus follows: "An award of compensation for injury to the eyesight of an employe, who was burned in the course of his duties, held, under the evidence, warranted, though oculists testified that in their opinion the defective eyesight was from other causes, and that they rejected claimant's testimony because they had never seen a similar case; there being testimony that for many years previous claimant was engaged in the building work and had no ocular defect".

Another, and more recent, Georgia decision is *Atlantic Steel Co. v. McLarty,* 39 S. E. (2d), 733, where wire cleaning compound splashed into claimant's eye, but experts testified it did not cause the subsequent loss of vision. The court sustained the opposite conclusion of the compensation board, reached upon the lay testimony of claimant and his wife. The syllabus is: "The testimony of an injured person as to the extent of his injuries may be believed in preference to the opinions of physicians testifying to the contrary".

Judgment Affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER concur.