19621

Peggy V. ODOM, Appellant, v. David J. STEIGERWALD, Respondent

(196 S. E. (2d) 635)

*Messrs. Gaddy and Davenport,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, for *Respondent,*

*Messrs. Gaddy & Davenport, of Greenville, for Appellant, in Reply.*

May 8, 1973.

LITTLEJOHN, Justice:

The plaintiff, Peggy V. Odom, brought this action to recover damages for personal injuries sustained in an intersection collision between a pick-up truck, which she was driving, and an automobile owned by David J. Steigerwald and driven by his son, young David G. Steigerwald.

The complaint alleges that the plaintiff's injuries were proximately caused by the negligence, carelessness, willfulness and wantonness of young Steigerwald in (1) driving the automobile from a side street, controlled by a stop sign, into a through street on which the plaintiff was traveling, without yielding the right of way; (2) failing to keep a proper lookout, and (3) failing to apply his brakes so as to avoid the collision.

The defendant interposed a general denial and plead the defense of contributory negligence, willfulness and wantonness.

At the conclusion of all evidence, the plaintiff moved for a directed verdict on the issue of liability; the motion was denied. Thereafter, the jury returned a verdict in favor of the defendant. Plaintiff moved for a new trial on the grounds that there was no evidence to support the verdict, that the evidence established the proximate cause of plaintiff's injuries was the failure to yield the right of way by the defendant, and that the evidence did not establish any careless, reckless, willful or wanton acts on the part of the plaintiff which could support the plea of contributory negligence. The motion was denied.

The plaintiff now appeals and alleges error on the part of the trial judge in failing to direct a verdict on the issue of liability and in failing to grant the motion for a new trial. In essence, the plaintiff contends that the only reasonable inferences to be drawn from the whole of the testimony are that the defendant's improper driving

conduct proximately caused the collision and that the defendant has failed to prove contributory negligence. If the trial judge erred in failing to grant the motion for a directed verdict on the liability issue, he could correct the mistake only by granting a new trial outright. Accordingly, we think that plaintiff sought the only relief available to her. See *South Carolina Elec. & Gas Co. v. Aetna Ins. Co.*, 233 S. C. 557, 106 S. E. (2d) 276 (1958).

On a clear day in December 1970, the pick-up truck, which plaintiff was driving, was traveling along Hudson Road in a southerly direction. The automobile of defendant, driven by young Steigerwald, was proceeding in an easterly direction along St. Augustine Street, which makes a "T" intersection with Hudson Road. Hudson Road is the favored, or through, street and vehicular traffic entering Hudson Road from St. Augustine Street is required to honor a "Stop" sign before entering the favored street. Young Steigerwald was attempting to enter the through street from plaintiff's right. Vehicles approaching the intersection from the north, such as plaintiff's, are obscured from view until clearing a hill crest approximately 200 or 300 feet from the intersection. The collision occurred after young Steigerwald undisputedly stopped at the "Stop" sign as required, and then pulled out directly into the plaintiff's lane. The collision occurred in plaintiff's lane of traffic as the front of the plaintiff's pick-up truck struck the left front fender of young Steigerwald's car.

It is the plaintiff's testimony that she observed the vehicle of young Steigerwald stopped at the "Stop" sign, and that as she approached the intersection about two car lengths away, he pulled out in front of her and into her path of travel. She testified that she applied her brakes as hard as she could, but was unable to stop before colliding.

It is the testimony of young Steigerwald that when he approached the intersection he was behind other vehicles, which had stopped, and as these vehicles entered the through street, he pulled up to the "stop" sign. He further testified

to the effect that upon stopping, he saw several vehicles approaching from his right; that he then looked left and saw no approaching traffic; that he looked back right and as the last vehicle, approaching from his right, cleared the intersection, he pulled out to cross the plaintiff's lane of travel in order to fall in behind and follow the last car passing from his right. He testified:

"I was sitting there for a long time, I might have looked left, and right, but mainly I was just watching those cars coming by to my right.

"Well, when I started pulling out, I saw her coming down the hill just before she applied her brakes, and I attempted to apply my brakes and stop, but I don't recall if I stopped or not. But I was already in the lane, and she couldn't move into the other lane because of the car I was following, that was coming in the opposite direction, and she hit me."

The testimony of the investigating patrolman was to the effect that the plaintiff's pick-up truck left skid marks of 50 feet to the point of impact and came to rest 31 feet past the point of impact, and that the forward portion of both vehicles had severe damages.

It cannot be seriously argued that young Steigerwald's conduct was not negligent and that such negligence did not proximately cause the collision. Whether or not it can be said that the plaintiff was free of contributory negligence, as a mattter of law, is a close question. However, we think that the only reasonable inference to be drawn from the whole of the testimony is that the real, the more immediate and efficient, cause of the collision involved in this case was the improper driving conduct of young Steigerwald.

The defendant's whole defense is based on the contention that the plaintiff was traveling at an excessive rate of speed and that such speed was a proximate concurring cause of the collision. It is fundamental that before the negligence of a plaintiff will defeat recovery,

it must be made to appear that such negligence contributed to the injury as a proximate cause. *Clyde v. Southern Public Utilities Co.,* 109 S. C. 290, 96 S. E. 116 (1918). It is without legal significance that speed was a contributing factor in placing the pick-up truck at a particular location on Hudson Road when the emergency arose, because the plaintiff had the legal right to occupy that portion of the street. See *Horton v. Greyhound Corp.,* 241 S. C. 430, 128 S. E. (2d) 776 (1962). Proximate cause is an often defined legal concept. See 14 South Carolina Digest, Negligence Key No. 56 (1952, Supp. 1972). We find no definition better than as articulated by the Court in *Ballenger v. Southern Worsted Corp.,* 209 S. C. 463, 40 S. E. (2d) 681 (1947):

". . . [P]roximate cause of the law is not necessarily the proximate cause of the logician. Legal proximate cause is determined upon mixed considerations of logic, common sense and experience, policy, and precedent."

We quote with approval from *Bodie v. Charleston & W. C. R. Co.,* 61 S. C. 468, 39 S. E. 715 (1901):

"A want of ordinary care may be said to contribute proximately to an injury when it is an active and efficient cause of the injury in any degree, however slight, and not the mere condition or occasion of it. But it is not a proximate cause of injury when the negligence of the person inflicting it is a more immediate, efficient cause."

See also *Seay v. Southern Railway Carolina Division,* 205 S. C. 162, 31 S. E. (2d) 133 (1944).

In the trial of this case, there were initially two issues to be determined: First, was young Steigerwald negligent? And, if so, secondly, was that negligence a proximate cause of injury to the plaintiff? These two questions should have been answered in the affirmative as a matter of law. It then became necessary to determine: Was the plaintiff negligent? If the plaintiff was not negligent, there could, of course, be no contributory negligence. Even if it was determined that the plaintiff was negligent, there was still one additional

question to be answered before the plaintiff would be barred of recovery, and that question was: Did plaintiff's negligence contribute as a proximate cause?

As indicated hereinabove, as a matter of law, we think that young Steigerwald was at least negligent and that his improper driving conduct was a proximate cause of the collision.

Assuming, without so deciding, that the plaintiff was driving at an excessive rate of speed and was negligent, we think, as a matter of law, that such was not a contributing proximate cause. The real cause, the more immediate and efficient cause, was the improper driving conduct of young Steigerwald. By driving his car directly into the path of plaintiff's vehicle when plaintiff was obviously so close to the intersection, young Steigerwald created a trap from which plaintiff could not escape.

The lower court should have granted the motion for a directed verdict on the issue of liability and submitted to the jury the question of damages. In failing to grant the motion for a directed verdict, and in failing to grant the motion for a new trial, we think he erred. Our statutes and rules do not authorize a new trial on the issue of damages only and, accordingly, a new trial generally shall be held. See *South Carolina Elec. & Gas Co., supra.* When a retrial is conducted, the evidence is never identically the same, but if the second trial warrants the same inferences, it will be the duty of the trial judge, upon appropriate motion to submit only the damages issue to the jury.

Reversed and remanded.

Moss, C. J., and Lewis and Brailsford, JJ., concur.

Bussey, J., dissents.

Bussey, Justice (dissenting):

Adherence to certain elementary principles of law, to my mind, necessarily leads to the conclusion that the trial judge was eminently correct in denying plaintiff's motions in this case. Accordingly, I am compelled to dissent.

It is, of course, elementary that in considering such motions, the evidence, together with all the inferences reasonably deducible therefrom, has to be viewed in the light most favorable to the nonmoving party. I most respectfully suggest that, contrary to this elementary principle, the majority opinion seems to view and state the evidence and the inferences therefrom in the light most favorable to the moving party, to-wit: the plaintiff.

"It is also well established in this jurisdiction that if the facts, which if true would constitute evidence of negligence, are controverted, or if not in dispute there may be a fair and reasonable difference of opinion as to whether the inference of negligence may be drawn therefrom, or if in controversy and the inferences properly deducible therefrom are doubtful, or if they tend to show both parties guilty of negligence or willfulness and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question becomes issuable and must be submitted to the jury under appropriate instructions. *Osteen v. Southern Railway Company,* 76 S. C. 368, 378, 57 S. E. 196; *Miller v. A. C. L. Railroad Company,* 140 S. C. 123, 138 S. E. 675." *Ford v. Atlantic Coast Line R. Co.,* 169 S. C. 41, 168 S. E. 143, 156.

See also numerous cases collected in West's South Carolina Digest, Negligence, Key No. 136(9), 136(10), 136(25), 136(26).

I find myself in disagreement with both major conclusions of the majority opinion and in the discussion of each of them I shall attempt to state the evidence and the inferences which I think reasonably deducible therefrom in the light most favorable to the defendant, as we are required to do under the settled law. The evidence, I think, created a jury issue as to whether young Steigerwald was or was not negligent and whether or not his conduct was a proximate cause of the collision. We are not, I think, warranted in holding, as a matter of law, that he was negligent and that such was a proximate cause. His testimony quoted in the majority opin-

ion is, I submit, the most unfavorable part thereof and is, moreover, quoted somewhat out of context. The pertinent testimony in context was as follows:

"Q. All right, sir, tell the jury then as well as you recall, what happened when you pulled up to St. Augustine, and what you did, and what you saw?

A. Well, I was behind several other cars, and when they had all gone I stopped at the stop sign, and there was some traffic coming from the right, so I sat and waited for this traffic to pass, and when the last car was fairly close I looked to my left and there was nothing coming left, so I pulled out after the last car was coming on my right.

Q. Let's go back. You first stopped behind other vehicles, is this correct?

A. Yes.

Q. And they got out of the way?

A. Yes.

Q. Do you recall whether you looked left or right first?

A. I was sitting there for a long time, I might have looked left, and right, but mainly I was just watching these cars coming by to my right.

Q. Did you then look back to your left before you pulled out?

A. Do you mean immediately?

Q. Well, just go ahead and tell the jury as nearly as you can the sequence of your looking?

A. Well, I was looking right until the car got fairly close, and then I looked left, then I looked right to follow him out.

Q. You looked back to the right, and then looked left, and you pulled out behind the car that was passing from your right?

A. Yes.

Q. To fall in behind him is that correct?

A. That's correct.

Q. Now what happened then?

A. Well, when I started pulling out I saw her coming down the hill just before she applied her brakes, and I at-

tempted to apply my brakes and stop, but I don't recall if I stopped or not. But I was already in the lane, and she couldn't move into the other lane because of the car I was following, that was coming in the opposite direction, and she hit me."

While the testimony of young Steigerwald coupled with the testimony of the plaintiff is susceptible of an inference of negligence on his part, it is, I think, equally susceptible of the inference that he exercised due care upon approaching and entering the intersection. Moreover, the evidence as a whole would clearly warrant the inference that any negligence on the part of young Steigerwald was not, in fact, the proximate cause of the collision, as I shall hereinafter attempt to demonstrate.

The collision occurred at approximately 5 P.M. on the cloudy afternoon of December 6, 1970. The vicinity was a residential subdivision in Greenville County. Plaintiff was driving her husband's vehicle in an area with which she was quite familiar. In approaching St. Augustine Street, plaintiff came over a steep hill, the crest of which was approximately two hundred feet north of St. Augustine Street, and a driver stopped on St. Augustine Street at the intersection cannot see an approaching vehicle beyond the crest of such hill. Likewise, a southbound driver on Hudson Road cannot see the intersection of St. Augustine Street until reaching the crest of such hill. The speed limit in the vicinity was 35 miles per hour. Despite her familiarity with the vicinity, plaintiff by her own testimony admittedly failed to reduce her speed while approaching this hazardous hill crest and the intersection immediately south of it, in violation of Sec. 46-363 of the 1962 Code (Sec. 46-361 in the supplement to the 1962 Code). By her own admission, her conduct constituted negligence *per se* and gave rise to a reasonable inference of reckless and willful conduct on her part.

There is only circumstantial evidence as to plaintiff's rate of speed, she not having testified thereabout other than to admit that she had not reduced the same.

Evidently taking a cue from the opinion of this Court in *Horton v. Greyhound Corp.*, 241 S. C. 430, 128 S. E. (2d) 776, the plaintiff argues, not as evidence but as to the inferences to be drawn from the evidence, the braking charts published in American Jurisprudence (2d) Desk Book, Document No. 176, page 76. The defendant in the same connection points out that even the experts disagree on such matters and to that end cites from "a Stopping Distance Table, published by the Lawyers and Judges Publishing Co., based upon studies by Samuel C. Tignor and O. K. Normann." The chart relied upon by defendant indicates an actual braking distance of 46 to 53 feet at 35 miles per hour. The table relied upon by the plaintiff indicates an actual braking distance of 67 feet at 35 miles per hour, plus a perception distance of 39 feet, plus reaction distance of 39 feet, for a total stopping distance of 145 feet at that particular speed.

Plaintiff's vehicle laid down skid marks for 50 feet prior to striking defendant's vehicle. Both vehicles were severely damaged by the impact, with the front of the Steigerwald vehicle being knocked around to the south; plaintiff's body struck her steering wheel with a sufficient force to brake the same, and her vehicle traveled 30½ feet beyond the point of impact to the east shoulder of Hudson Road. From these physical facts her counsel frankly concedes in his brief that "she could have been travelling at a speed in excess of 35 miles per hour". It is argued, however, that she was proceeding at a reasonable and safe speed under the circumstances, the statutory admonition to reduce speed under the particular circumstances being completely disregarded. The American Jurisprudence braking chart argued by plaintiff's counsel would indicate a speed on her part in excess of 35 miles per hour and I conclude it readily inferable from the evidence that her speed was as much as 45 miles per hour.

I, furthermore, am convinced that the evidence was quite sufficient to warrant the jury concluding that negligence or recklessness on the part of the plaintiff was the primary, efficient, proximate cause of the collision and that but for her

failure to reduce speed no collision would have occurred. The relative speeds of the two parties and their relative distances from the point of impact at the moment they first had the opportunity to observe each other have a most important bearing upon the question of whose conduct was, in fact, the proximate cause of this collision. Unfortunately, the facts relevant to the speed of defendant's vehicle and the distance thereof from the point of impact at the moment plaintiff's vehicle topped the crest of the hill, are not at all well developed. There is no evidence, however, of a jack rabbit start by the defendant's vehicle, and in the absence of such it is highly improbable that the average speed of his vehicle exceeded 5 miles per hour in the relatively short distance traveled from the stop sign to the point of impact.

The record discloses the paved portion of Hudson Road to be 22 feet in width, and the evidence, physical and otherwise, indicates the point of impact to have been in the southbound lane thereof but near the center line. The record does not disclose just how far to the west of the pavement of Hudson Road the stop sign was located. It is a matter of common knowledge, however, that few, if any, publicly maintained rights of way in surburban residential communities are less than 50 feet in width. Based on common observation, and experience, the most likely location for the stop sign was somewhere near the outer limit of the right of way, or some 20 or 25 feet from the center of Hudson Road. All of the evidence is to the effect that young Steigerwald was stopped "behind the sign" when observing traffic preparatory to entering the intersection. I think it readily inferable from the evidence that his stopped position was some 20 to 25 feet from the point of impact. At five miles per hour, one moves seven plus feet per second, or twenty-one plus feet in three seconds. Stated another way, I think it clearly inferable that, including his reaction time, at least three to four seconds elapsed from the precise moment young Steigerwald decided to commit himself to the intersection until the moment of impact.

At 35 miles per hour, the lowest speed even attributed to the plaintiff, she would have been moving fifty-one plus feet per second. It follows that if young Steigerwald was only three seconds from the moment of impact when he made his move, plaintiff, at 35 miles per hour, would have been then one hundred fifty-three feet away and not the incredible distance of only two car lengths to which she testified. If, as is much more probable, her speed was 45 miles per hour, she was travelling 66 feet per second and three seconds prior to the impact was 198 feet from the point of impact, or approximately at the crest of the hill. Assuming young Steigerwald decided to make his move four seconds prior to the moment of impact and a speed of 45 miles per hour on the part of the plaintiff, she inferably was over the crest of the hill and was out of sight at the time he made his decision to enter the intersection.

Under Sec. 46-424 of the Code, Steigerwald was required to yield the right of way to vehicles in the intersection on Hudson Road and those approaching so closely as to constitute an immediate hazard, but having so yielded, he was then entitled to proceed, with the plaintiff then being required to yield the right of way. From what has been said above, I think it readily inferable that he did, in fact yield to all vehicles approaching so closely as to constitute an immediate hazard and that when he decided to proceed, the plaintiff's vehicle was simply not near enough to the intersection to constitute an immediate hazard, the obligation being thereafter upon the plaintiff to yield the right of way.

To summarize, when the relative speeds of the two vehicles and their relative distances from the point of impact at the moment they first had opportunity to observe each other are considered, the evidence was quite sufficient to warrant the jury in concluding, as I think it most likely did, that but for plaintiff's failure to heed the statutory admonition, as well as the dictates of reason and prudence, with respect to her speed and/or failure to yield the right of way to a vehicle

lawfully entering the intersection, no collision would ever have occurred.

The case of *Horton v. Greyhound Corp., supra,* is in my view clearly distinguishable on the facts. Cases, not precisely in point, but much more nearly so, are *Carter v. Beals,* 248 S. C. 526, 151 S. E. (2d) 671, and *Neese v. Toms,* 196 S. C. 67, 12 S. E. (2d) 859. Both of these cases involved intersection collisions, just as the instant case. In each of them the plaintiff was a motorist upon the servient highway and was struck by a motorist upon a dominant highway. In both of these cases the plaintiff's recovered verdicts which were affirmed on appeal, excessive speed of the motorist upon the dominant highway in each instance being relied upon as a proximate cause of the collision and injuries.

In the quite recent case of *Wilson v. Marshall,* S. C., 195 S. E. (2d) 610 opinion filed March 20, 1973, we reversed the trial judge for directing a verdict in favor of the plaintiff on the issue of liability, holding that there was a jury issue as to whether the plaintiff was negligent and, if so, whether such negligence was a contributing proximate cause of the collision. I most respectfully suggest that we cannot consistently reverse the trial judge in this case for doing what we held the trial judge should have done in the Wilson case. In the Wilson case there was admitted negligence on the part of the defendant; here we have admitted negligence on the part of the plaintiff, and, moreover, much stronger support for the inference that her negligence was the proximate cause of the collision than was the case in Wilson.

For the foregoing reasons, I would affirm the judgment of the lower court.