525 S.E.2d 528

Larry E. DAVIS and Joanne Davis, Plaintiffs,

of whom Larry E. Davis is, Respondent,

and

Joanne Davis is, Respondent/Appellant,

v.

Gerald S. TRIPP, Appellant,

and

Norfolk Southern Railway Co., and INA
Limousine Service, Inc., Appellants.

James Hugh Schumpert, Zan R. Schumpert, Plaintiffs,

of whom James Hugh Schumpert is, Respondent,

and

Zan R. Schumpert is, Respondent/Appellant,

v.

Gerald S. Tripp, Appellant,

and

Norfolk Southern Railway Co., and INA
Limousine Service, Inc., Appellants.

William Grosskurth, Respondent,

v.

Charles Duncan, Duncan Red Bird Limo, Leroy Miller,
Norfolk Southern Railway Co., Appellants.

No. 3086.

Court of Appeals of South Carolina.

Heard Sept. 9, 1999.

Decided Dec. 6, 1999.

228

David L. Moore, Jr., of Love, Thornton, Arnold & Thomason, of Greenville, for appellants INA Limousine Service, Inc., Charles Duncan, Duncan Red Bird Limo, and Leroy Miller; Daniel B. White and Keith D. Munson, both of Gibbs, Gallivan, White & Boyd, of Greenville, for appellant Norfolk Southern Railway Company; and G. Edward Welmaker, of Acker, Welmaker & Smith, of Pickens, for appellant Gerald D. Tripp.

Stephen K. Haigler, of Glenn, Haigler & Maddox, of Anderson; and Michael J. Warshauer, of Warshauer & Woodruff, of Atlanta, GA, for respondents James Hugh Schumpert, Larry E. Davis, and respondents/appellants Joanne Davis and Zan Schumpert; and Symmes W. Culbertson, of Greenville, for respondent William Grosskurth.

PER CURIAM:

This appeal involves three separate actions brought by (1) Larry E. Davis and his wife, Joanne, (2) James Hugh Schumpert and his wife, Zan, and (3) William Grosskurth, as a result of injuries sustained in an automobile accident. The three cases were consolidated at trial and for appeal. We affirm in part, reverse in part, and remand.

## FACTS

On October 12, 1993, respondents Davis, Schumpert, and Grosskurth (collectively, the employees) were working for Norfolk Southern Railway Company on a run from Atlanta to Greenville. Under the law applicable to railway employees, they could work only twelve hours a day. Upon the train's

arrival in Seneca, the employees had worked almost twelve hours. Consequently, Norfolk Southern contacted INA Limousine Service,[1] which was under contract with Norfolk Southern, to transport these employees to Greenville, South Carolina where they would "mark off work" and spend the night.

Leroy Miller drove the taxi that transported the employees. On the way to Greenville, the taxi collided with a pickup truck driven by Appellant Gerald Tripp at the intersection of Highway 123 and Fish Trap Road in Pickens County. Tripp, traveling on the subordinate road, had pulled first into the median, and then into the path of the oncoming taxi.

The employees brought separate actions for personal injuries they sustained in the resulting collision. Davis's wife and Schumpert's wife also commenced actions for loss of consortium. The actions were consolidated at trial, and the jury returned verdicts of $300,000 for Davis, $39,000 for Schumpert, and $13,500 for Grosskurth. The trial court *sua sponte* refused to submit to the jury the wives' loss of consortium claims. All of the employees, as well as the wives, appeal.[2] This court granted a motion for consolidation of the appeals.

## *ISSUES*

I. Did the trial court err in failing to dismiss Grosskurth's action in light of his alleged failure to meet the applicable statute of limitations?

II. Did the trial court err by refusing to admit testimony concerning Norfolk Southern's firing of the employees because the excluded testimony was essential to the jury's proper evaluation of the employees' damages?

III. Did the trial court err in failing to charge the jury under *Horton v. Greyhound Corp.*, 241 S.C. 430, 128 S.E.2d 776 (1962), as to the role Miller's speed played in the accident?

1. Charles Duncan, d/b/a Duncan Red Bird Limo, a defendant in the Grosskurth suit, operated INA Limousine Service.

2. Appellants INA, Charles Duncan, d/b/a Duncan Red Bird Limo, and Leroy Miller joined together in their appeal; therefore, these appellants will be collectively referred to herein as the "INA Appellants."

IV. Did the trial court err in failing to submit to the jury the wives' loss of consortium claims?

## *DISCUSSION*

### I. STATUTE OF LIMITATIONS ON GROSSKURTH'S COMPLAINT

 The accident occurred on October 12, 1993. On September 13, 1996, Grosskurth timely *filed* a summons and complaint against Charles Duncan, d/b/a Duncan Red Bird Limo; Leroy Miller, as agent for Duncan Red Bird Limo; and Norfolk Southern Railway Company. Appellants moved for summary judgment, asserting the statutes of limitations barred Grosskurth's action, as none of them were served within three years of the date of the accident. The trial court denied the summary judgment motion. Appellants argue the trial judge erred in denying their summary judgment motion. This issue is not appealable.

 The denial of a motion for summary judgment is not directly appealable because it does not finally determine anything about the case's merits. *Ballenger v. Bowen,* 313 S.C. 476, 443 S.E.2d 379 (1994). This is true even after a trial of the case on its merits. *Raino v. Goodyear Tire & Rubber Co.,* 309 S.C. 255, 422 S.E.2d 98 (1992). "Issues relating to subject matter jurisdiction may be raised at any time, cannot be waived even by consent, and should be taken notice of by this court on our own motion." *Wachovia Bank of South Carolina, N.A. v. Player,* 334 S.C. 200, 205, 512 S.E.2d 129, 132 (Ct.App.1999) (referencing *Johnson v. State,* 319 S.C. 62, 64, 459 S.E.2d 840, 841 (1995)). However, a statute of limitations defense does not raise a question of subject matter jurisdiction. *McLendon v. South Carolina Dep't of Highways & Pub. Transp.,* 313 S.C. 525, 443 S.E.2d 539 (1994). Therefore, this court cannot address the trial court's denial of Appellants' summary judgment motion as to Grosskurth.

### II. TESTIMONY AS TO THE FIRING OF DAVIS, SCHUMPERT, AND GROSSKURTH

 All Appellants argue the trial court erred in not allowing them to present evidence that the employees were fired

after the accident, thereby refuting an inference that their particular jobs with Norfolk Southern were available to the employees during the entire time of their incapacities.

An injured party who is employed at the time of his injury, may present proof of the loss of wages between the date of occurrence of the injury and the date he can return to work as elements of damages. Moreover, if the party was employed at the time of the injury, his earnings are evidence of the value of his lost time and are admissible as evidence of that value. 22 Am.Jur.2d *Damages* § 156 (1988).

The Appellants proffered testimony that while en route to Greenville, the employees bought and consumed beer. After a disciplinary hearing on December 20, 1993, the employees were "taken out of service" for consuming alcohol while on the job in violation of Norfolk Southern regulations. Norfolk Southern terminated the employees on December 29, 1993, retroactive to October 13, 1993. The employees were rehired on March 12, 1994, but would not have received any wages for the intervening period.

The employees moved in limine to exclude evidence that they had been fired as unduly prejudicial. They argued this discipline "does not, as a matter of law, affect the quantum of damages to which either plaintiff is entitled so long as they were physically unable to work, because of injuries sustained in the subject crash, during the period of time covered by their discipline and dismissal." The employees argued that if this evidence was allowed, they would be prevented from collecting damages for lost wages resulting from the injuries caused by the Appellants. The trial court agreed and granted the motion.

■ The employees' suit against Norfolk Southern is brought pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C.A. §§ 51–60 (1989 & Supp.1999). Evidentiary decisions in FELA cases are matters of federal law. *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968 (8th Cir.1995) (citing *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980)); *see also Haselden v. Atlantic Coast Line R. Co.*, 214 S.C. 410, 418, 53 S.E.2d 60, 63 (1949) ("evidence and exceptions should be considered in the light of the Federal decisions interpreting

[FELA]"). Under federal law, this court reviews the trial court's evidentiary and procedural rulings for an abuse of discretion. *Persinger v. Norfolk & Western Ry. Co.,* 920 F.2d 1185 (4th Cir.1990). The same standard applies to the employees' common law suit against Tripp and the INA Appellants. *See Gamble v. International Paper Realty Corp.,* 323 S.C. 367, 474 S.E.2d 438 (1996) (the admission or exclusion of evidence is a matter within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion).

Appellants argue the fact the employees were not employed by Norfolk Southern from October 13, 1993 through March 12, 1994, proves "they have lost no wages" during that time. Further, evidence of the unavailability of the employees' jobs is relevant to their inability to earn the sums they seek in lost wages. They argue that without this evidence "the jury was left with the mistaken impression that, but for the accident, the [employees] would still be earning the same income they received before the accident." We disagree. The evidence shows Davis and Schumpert were totally incapacitated during the period of their termination and were not able to hold down other employment. But for their injuries, these employees, presumably would have been able to work for another employer. They were deprived of that opportunity by the negligence of the Appellants. Evidence of the wages paid them by Norfolk Southern is therefore admissible to show what they could have earned elsewhere if they had not been injured. *See Hall v. Norfolk Southern Ry. Co.,* 829 F.Supp. 1571 (N.D.Ga.1993).[3] Under the unique circumstances of this case, we reject Appellants' claim that they should have been permitted to show the employees' jobs were unavailable during the period of termination.[4] We also disagree with the assertion that the employees had the burden of proving other jobs were

---

3. Appellants rely on *Hall* for the proposition that a plaintiff is not entitled to lost wages based on his former railroad position. We do not read *Hall* to so provide. In *Hall,* as in the instant case, the plaintiff did not seek to recover for wages lost due to his dismissal. The *Hall* court, as do we, affirmed plaintiff's use of his railroad earnings "as a measure of his earning capacity at the time of the accident." *Id.* at 1582.

4. There is a clear inference that it is customary in the railroad industry that terminated employees are regularly rehired.

available and the wages they could have earned at other jobs when, in any event, they would not have been able to seek other employment because of their injuries. *McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987) ("Whatever doesn't make any difference, doesn't matter.") Therefore, evidence of the employees' termination by Norfolk Southern was not relevant to their ability to earn wages and, accordingly, we do not find the trial court abused its discretion in preventing the introduction of this evidence. *First Savings Bank v. McLean*, 314 S.C. 361, 444 S.E.2d 513 (1994) (appellant has the burden of showing both error and prejudice).

Appellants further argue the employees' recovery of their lost wages is governed by the Railway Labor Act. The Act governs only to the extent the employees attempt to recover wages resulting from their dismissal. Here, the employees seek to recover wages for the time they were unable to work due to their injuries, not as a result of their dismissal. Therefore, the Railway Labor Act does not govern this issue. We therefore affirm the trial court's decision to exclude evidence of the employees' termination.

### III. FAILURE TO CHARGE JURY REGARDING MILLER'S SPEED

■ The INA Appellants and Norfolk Southern appeal the trial court's decision not to instruct the jury in accordance with *Horton v. Greyhound Corp.*, 241 S.C. 430, 128 S.E.2d 776 (1962). We affirm.

INA, relying on *Horton*, requested the jury receive the following instruction:

The fact that a vehicle's speed places that vehicle at a particular location on a highway when a collision occurs is without legal significance if that vehicle has a legal right to occupy that portion of the highway. In order for speed to be considered a contributing factor to a collision, there must be some evidence that if the vehicle had been operated at a reasonable speed, it could have been stopped at some distance short of the point of collision.

In *Horton* the supreme court noted the plaintiff must prove not only that the defendant bus driver was negligent, but also that "such negligence on his part was a proximate cause of the

fatal collision. Negligence may be deemed a proximate cause of an injury only when without such negligence the harm would not have occurred or could have been avoided." *Id.* at 437, 128 S.E.2d at 780. The court added that

"... [c]oncurring causes operate contemporaneously to produce the injury, *so that it would not have happened in the absence of either....* It is enough (to impose liability) to show that it is a proximate concurring cause; *that is, one that was so efficient in causation that, but for it, the injury would not have occurred ... ".*

*Id.* at 439, 128 S.E.2d at 781 (quoting *Horne v. Southern Ry. Co.*, 186 S.C. 525, 538, 197 S.E. 31, 36 (1938)) (emphasis in original).

The *Horton* court found excessive speed was the only evidence of the bus driver's negligence, and concluded such evidence,

although sufficient to support an inference of concurrent negligence by the defendant, is insufficient to support a reasonable inference that without such negligence the collision would not have occurred. Our conclusion does not and need not rest on a certainty that, if the bus had been operated at a reasonable speed, the collision would have happened anyway. It does rest on the absence of evidence sufficient to raise a reasonable inference that it would not have occurred but for the negligence of the bus driver, which amounts to a failure of proof of an essential element of plaintiff's cause of action.

*Id.* at 441, 128 S.E.2d at 782. The cases that have relied on *Horton* in order to find a party's negligence was not a concurring cause of the collision have similarly found speed to be the only evidence of such party's negligence. *Odom v. Steigerwald*, 260 S.C. 422, 196 S.E.2d 635 (1973); *Kennedy v. Carter*, 249 S.C. 168, 153 S.E.2d 312 (1967); *Guyton v. Guyton*, 244 S.C. 357, 137 S.E.2d 273 (1964); *Alston v. Blue Ridge Transfer Co.*, 308 S.C. 292, 417 S.E.2d 631 (Ct.App.1992); *see also Gunnels v. Roach*, 243 S.C. 248, 133 S.E.2d 757 (1963) (the collision could not have been avoided even if the defendant had seen the plaintiff at the instant he became visible).

These principles, however, do not apply when there is evidence of additional negligence or that speed was a causative

factor. In such cases, the court cannot, as a matter of law, find no liability. *See Tubbs by Duren v. Bowie*, 308 S.C. 155, 417 S.E.2d 550 (1992) (where there was evidence that the speeding defendant failed to take appropriate evasive action, liability was an issue for the jury); *Wilson v. Marshall*, 260 S.C. 271, 195 S.E.2d 610 (1973) (although decedent was clearly negligent in failing to yield the right of way, plaintiff's failure to keep a proper lookout and driving at a reduced speed inferred plaintiff's negligence was a contributing proximate cause of the collision); *Roumillat v. Keller*, 252 S.C. 512, 167 S.E.2d 425 (1969) (the nature of the impact could lead the jury to conclude that, if not for defendant's excessive speed, his auto could have been controlled as to avoid the collision); *Clark v. Cantrell*, 332 S.C. 433, 504 S.E.2d 605 (Ct.App.1998) (evidence of defendant's excessive speed and recklessness supported the jury's finding that her speed contributed to the accident); *see also Player v. Thompson*, 259 S.C. 600, 193 S.E.2d 531 (1972) (where there was additional evidence of negligence, dog running out in front of car could not be held as a matter of law to be the sole proximate cause of the collision).

 This Court may not reverse for failure to give a requested charge unless the refusal is both erroneous and prejudicial. *Clark*, 332 S.C. 433, 504 S.E.2d 605. "[T]he court acts correctly when it charges the jury on the law framed by the issues as made by the pleadings and the facts developed by the evidence in support of those issues." *Tucker v. Reynolds*, 268 S.C. 330, 335, 233 S.E.2d 402, 404 (1977).

There was evidence presented at trial that prevents this Court from concluding, as a matter of law, that there was no negligence other than Tripp's that caused the accident. The taxi's speedometer was inoperable, so Miller could not determine definitively how fast he was driving although he admitted to driving at least 60 m.p.h.[5] While traveling on Highway 123, Miller passed several cars but neglected to return to the right lane before the accident.

---

**5.** The speed limit on Highway 123 was 55 m.p.h., but Miller could not recall if there were regulatory signs that reduced the speed in some areas to 45 m.p.h. Miller testified he never slowed to 45 m.p.h.

Miller admitted he saw Tripp's truck in the grassy median of Highway 123, the dominant, four-lane highway, prior to reaching its intersection with Fish Trap Road. He acknowledged that he recognized at the time that "any car at Fish Trap Road intersection created a real possibility of a big problem," but Miller did not slow down. Miller turned to Schumpert, who was seated to his right, and said, "Yeah, that's what he needs to do, is just pull out. I need a new car." When he "looked back up," Tripp had pulled out into the intersection.

Miller testified that, when he saw Tripp pull out, he could have pulled into the grassy median to his left, but felt he would have "rolled" the car. However, Schumpert, who revisited the scene after the accident, felt the grass would not have created a problem. The totality of the evidence is susceptible of the reasonable inference that there was a failure on Miller's part to exercise due care in keeping a proper lookout and driving at an appropriately reduced speed under the circumstances, and that such negligence on his part was a contributing proximate cause of the collision. Furthermore, in closing argument Norfolk Southern asked the jury to consider Tripp's failure to yield as the sole cause of the accident, because Tripp pulled out so suddenly, Miller could not have avoided the collision at any speed.

It is well settled that jury instructions must be considered in their entirety. *Jones v. Ridgely Communications, Inc.,* 304 S.C. 452, 405 S.E.2d 402 (1991) (in order to warrant reversal, refusal to give a requested charge must have been erroneous and prejudicial, and the charge must be considered as a whole). We have examined the court's charge to the jury and conclude that, when viewed in its entirety, it fairly and sufficiently sets forth the applicable law in this case. We hold, therefore, the trial court did not err in refusing to give the requested instruction.

## IV. LOSS OF CONSORTIUM CLAIMS OF JOANNE DAVIS AND ZAN SCHUMPERT

Joanne Davis and Zan Schumpert filed separate actions against Tripp for loss of consortium resulting from injuries their husbands sustained in the accident. The trial

court, over the wives' objection, *sua sponte* decided not to submit the claims to the jury. The wives argue the court's decision was error because the evidence clearly showed they suffered damages as a result of their husbands' injuries. We agree.

When this court reviews a grant of directed verdict, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-prevailing party. *Davenport v. Cotton Hope Plantation Horizontal Property Regime,* 333 S.C. 71, 508 S.E.2d 565 (1998). "If the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury." *Quesinberry v. Rouppasong,* 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998).

Recovery for loss of consortium is provided for in S.C.Code Ann. § 15–75–20 (1976), which states, in pertinent part, that "[a]ny person may maintain an action for damages arising from an intentional or tortious violation of the right to the companionship, aid, society and services of his or her spouse." *See also Gosnell v. Dorchester Sch. Dist. No. 2,* 301 S.C. 21, 389 S.E.2d 865 (1990) (observing that at common law, a spouse is entitled to recover the value of the injured spouse's services, society, and companionship in an action for loss of consortium).

The wives rely on *Page v. Crisp,* 303 S.C. 117, 399 S.E.2d 161 (Ct.App.1990), to support their position. In *Page* the plaintiff husband brought an action against the appellants for loss of consortium after his wife was injured in a collision with the appellants. The appellants admitted liability in the accident and a jury awarded plaintiff's wife $44,000. The same jury returned a verdict for the plaintiff husband in the amount of "zero dollars." The husband appealed the trial judge's refusal to instruct the jury after the verdict, to return to the jury room and write a verdict in his favor.

In reversing the trial court, this court held that the plaintiff husband was entitled to a verdict in some amount as a matter of law. The *Page* court noted that, as in the instant case, liability was admitted; the evidence relative to damages sustained by the loss of consortium plaintiff was neither disputed nor contested; and the damages to which the plaintiff testified were reasonably to have been expected given the seriousness

of the injuries and substantial damages sustained by the injured spouse. We believe, as in *Page*, that a lack of award to spouses when these factors are present creates an unacceptable inconsistency. *See also Sullivan v. Davis*, 317 S.C. 462, 454 S.E.2d 907 (Ct.App.1995) (reversing trial court's denial of new trial absolute motion where wife and injured husband had been married for almost forty-four years; wife spent almost fourteen hours a day at the hospital for a week, and then six to eight hours a day for two months; at the nursing home wife spent afternoons with him; and on his return home, wife assisted him in all his daily activities including bathing him, dressing him, and caring for his colostomy).

We believe both wives presented evidence from which a jury could reasonably infer they had sustained a loss of consortium. Schumpert's wife testified that, before the accident, she relied on her husband in her everyday activities, with childcare, and for household repairs. Schumpert was unable to help her at all for several months after the accident. Davis's wife testified his injuries caused their normal schedule to be disrupted, and she "had to wait on him, actually hand and foot" for some two to three months. She added that being out of work was hard on Davis, and he was "real short-tempered. He couldn't, you know, carry on like a civil conversation.... [H]e wasn't the person he was before."

Loss of consortium encompasses not only the loss of services, but also the loss of society and companionship. *See, e.g., Sullivan*, 317 S.C. 462, 454 S.E.2d 907. We think there was enough evidence presented to require submission of the wives' claims to the jury. Accordingly, we reverse the trial court's decision on the wives' loss of consortium claims and remand for further proceedings consistent with this determination.

### CONCLUSION

For the foregoing reasons, we find (1) Appellants' appeal of the trial court's denial of their summary judgment motion in Grosskurth's action is not appealable; (2) the trial court did not err in excluding testimony regarding the termination of the employees; (3) the trial court's failure to give an instruction pursuant to *Horton v. Greyhound* was not error; and (4)

240

the wives' loss of consortium claims should have been submitted to the jury, thus necessitating a remand for trial as to these claims only. Accordingly, the judgment below is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

CURETON, HEARN and HOWARD, JJ., concur.