Richard Allen MARKLAND, Plaintiff,

v.

**NORFOLK DREDGING COMPANY,**
Defendant.

No. 89–1035–CIV–ORL–19.

United States District Court,
M.D. Florida,
Orlando Division.

July 16, 1991.

Laurence F. Valle, Nicklaus, Valle, Craig & Wicks, Miami, Fla., for plaintiff.

Nathaniel G.W. Pieper, Lau, Lane, Pieper & Asti, P.A., Tampa, Fla., for defendant.

## ORDER

GEORGE C. YOUNG, Senior District Judge.

This case is before the Court upon Norfolk Dredging Company's Motion for New Trial or, in the Alternative, Remittitur, and memorandum in support thereof, filed May 10, 1991 (Doc. Nos. 56 and 57), and Plaintiff's response thereto, filed May 30, 1991 (Doc. No. 60). Oral argument on the motion was held before the Court on May 31, 1991. After hearing argument from both parties, the Court stated that the jury's damage verdict in this case shocked the conscience of this Court, and advised the parties that the Court would enter a written order on Defendant's Motion for New Trial or Remittitur after further consideration.

This case, which arises under the Court's admiralty and diversity jurisdiction, involves claims for damages under the Jones Act, 46 U.S.C.App. § 688 (1982), and general maritime law, for a knee injury suffered by Plaintiff while working on a barge operated by Defendant. At the time of the accident, Plaintiff was twenty years old. The parties stipulated to Defendant's liability, and damages issues only were tried to the jury beginning on April 23, 1991. On April 26, 1991, the jury found that Plaintiff had sustained damages, reduced to present value, of $88,000.00 for future medical expenses, $87,000.00 for lost past income,

$472,000.00 for lost future income, and $1,250,000.00 for intangible damages, including $750,000.00 for past and $500,000.00 for future pain and suffering, disability, disfigurement, mental anguish and loss of capacity to enjoy life [hereinafter referred to as "pain and suffering"]. On the same day, the Court entered judgment on the jury's verdict in the aggregate amount of $1,897,000.00.[1]

In the motion presently before the Court, Defendant has moved for a new trial or in the alternative, remittitur, based on its arguments that:

(1) The jury's award of $1,250,000 for intangible damages was shocking and grossly excessive and the product of highly prejudicial and inflammatory evidence [concerning Defendant's alleged termination of maintenance payments in retribution for Plaintiff's hiring of an attorney], erroneously admitted over Defendant's repeated objections.

(2) The jury's awards for lost past income and for future income were excessive, based entirely upon the speculative testimony of Plaintiff's experts and contrary to the great weight of the evidence adduced at trial.

(3) The Court erred in refusing to permit Defendant's expert annuitist to testify, depriving the jury of evidence that annuity policies purchased for $37,617 and $256,790 would provide Plaintiff with the identical amounts for future medical expenses and lost future income, respectively, as Plaintiff's expert economist's speculative projections.

■ The standard a judge must follow in deciding whether to upset a jury verdict is clear. A jury award is not to be set aside or a new trial ordered unless the award is so exorbitant as to shock the judicial conscience or indicate bias, passion, prejudice, or other improper motive on the part of the jury. *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435 (11th Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); *Burney v. Intermare K.G., K.S. Kuhlschiff K.m.b.H. and Co.*, 717 F.Supp. 793 (M.D.Fla.1988), *aff'd*, 886 F.2d 1323 (11th Cir.1989). It is within the discretion of the trial court to determine whether the excessiveness of a verdict warrants a new trial or a remittitur. *Goldstein*, 758 F.2d at 1448.

### Pain and Suffering Award

Defendant argues that the size of the intangible damages award in this case was the result of Plaintiff's testimony that Defendant's representative reduced Plaintiff's maintenance and cure payments in retaliation for Plaintiff's hiring of an attorney to represent him with respect to his knee injury.[2] Defendant maintains that the Court erred in admitting this evidence. In the Court's view, it is more likely that the testimony elicited from Plaintiff and his mother concerning his injury and recuperation aroused sympathy on the part of the jury.

Specifically, Plaintiff testified that, after learning of the accident, his estranged wife, from whom he is now divorced, telephoned him and told him she "did not want to be with a cripple."[3] Plaintiff also testified that he suffered extreme pain, that during his recuperation he was unable to go to the bathroom without assistance and that his mother had to help him pull his pants down, which made him feel "embarrassed as hell"; and that, while in the hospital, he would take an antidiarrheal

---

**1.** By agreement of the parties, the Court was to subtract $14,544.00 from the jury's award, which represents the amount of maintenance paid by Defendant from the date of the accident to the time of trial.

**2.** At the time this evidence was introduced, the evidence was relevant to Plaintiff's claim for maintenance and cure. Subsequent to the admission of this evidence, Plaintiff elected to no longer pursue his maintenance and cure claim, and pursue instead his claim for past lost wages.

Thus, the challenged evidence was no longer probative of any issue given to the jury. The Court declines to find that this evidence caused the jury to inflate the damages award in an effort to punish Defendant.

**3.** Plaintiff did not contend that the accident precipitated the breakup of his marriage. Plaintiff acknowledged that his marriage was "doomed to start with...." April 25, 1991, Vol. II, p. 127.

medicine to avoid the necessity of using a bedpan. April 25, 1991, Vol. II, p. 128. He further testified that, after the accident, he would "wake up screaming" from nightmares. *Id.* at 131. Plaintiff's mother testified that, while he recuperated from his operations, her son was in extreme pain, and that he was so depressed that he did not eat and had no social life.

■ "In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." *Goldstein,* 758 F.2d at 1448; *Lowe v. General Motors Corp.,* 624 F.2d 1373, 1383 (5th Cir.1980). This "maximum recovery rule" is applied to determine the amount of remittitur that may be ordered in lieu of a new trial once the court has decided that the verdict is excessive. *Jackson v. Magnolia Brokerage Co.,* 742 F.2d 1305, 1307 (11th Cir.1984). Essentially, the rule exists

to prevent a judge from substituting his or her opinion as to what might be a "fair" award for that of the jury. *Geyer v. Vargas Productions, Inc.,* 627 F.2d 732 (5th Cir.1980); *Gorsalitz v. Olin Mathieson Chemical Corp.,* 429 F.2d 1033 (5th Cir. 1970).

Each award for pain and suffering depends heavily on its facts.[4] "While pain and suffering is, to a large degree, not susceptible to monetary quantification, and the jury thus necessarily has especially broad leeway, nevertheless, '[t]he sky is simply not the limit.'" *Simeon v. T. Smith & Son, Inc.,* 852 F.2d 1421, 1427 (5th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989) (quoting *Osburn v. Anchor Laboratories, Inc.,* 825 F.2d 908, 920 (5th Cir.1987), *cert. denied,* 485 U.S. 1009, 108 S.Ct. 1476, 99 L.Ed.2d 705 (1988) and *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 784 (5th Cir.1983)).[5]

---

**4.** For this reason, this Court has not relied on the amount of damages awarded in similar cases in reaching its conclusion that the intangible damage award herein is excessive, *see Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 364 (5th Cir.1980); however, the Court notes that some federal courts have found it useful to review awards in other federal cases involving similar injuries. *See Simeon v. T. Smith & Son, Inc.,* 852 F.2d 1421 (5th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). The following is a sampling of federal cases reviewed by the Court after determining the maximum amount of damages for pain and suffering supported by the evidence in the instant case:

*Earl v. Bouchard Transportation Co., Inc.,* 917 F.2d 1320 (2d Cir.1990) (deckhand forced to retire after suffering ankle and elbow injury; general damages remittitur to $380,000 affirmed on appeal).
*Oliveri v. Delta Steamship Lines, Inc.,* 849 F.2d 742 (2d Cir.1988) (seaman with foot injury rendering him medically unfit for sea duty awarded $50,000 for future pain and suffering).
*Johnson v. Offshore Express, Inc.,* 845 F.2d 1347 (5th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988) (seaman rendered totally and permanently disabled from any gainful employment, unable to walk without crutches; $555,000 award for pain and suffering, disfigurement and physical disability).
*Hernandez v. M/V Rajaan,* 841 F.2d 582 (5th Cir.), *opinion corrected,* 848 F.2d 498 (5th Cir. 1988), *cert. denied,* 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562, 488 U.S. 1030, 109 S.Ct. 837,

102 L.Ed.2d 970 (1989) ($1 million pain and suffering award to longshoreman permanently paralyzed from chest down).
*Green v. M/V Alinda,* 1990 WL 3149 (E.D.La. Jan. 5, 1990) (longshoreman who injured knee required two surgeries and placement of artificial device in knee joint; suffered continued pain; activity restrictions including *no running;* awarded $38,000 [$5,000 per year] for past and future pain and suffering).

**5.** As the Fifth Circuit Court of Appeals recognized in *Osburn,* 825 F.2d at 920:

> In a very real sense, there is no way to place a monetary value on a person's pain and suffering.... Most of us would not trade two or three million dollars for [the plaintiff's] situation.... Yet the very purpose of such damage awards is to affix dollar amounts for losses that cannot be measured in money. We must therefore exercise our best judgment and place some restraints on awards, for as Judge Rubin has said, "[t]he sky is simply not the limit for jury verdicts."

[quoting *Caldarera* ].
Recently, in *Pacific Mutual Life Insurance Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the United States Supreme Court sanctioned the propriety of a court's review of a jury award of punitive damages. In that case, the Defendant insurance company challenged a punitive damage award against it in Alabama as the product of unbridled jury discretion. The Supreme Court rejected the Defendant's claim that the punitive damages violated its due process rights, holding that Alabama's post-trial procedures providing for post-trial

■ Upon consideration of the instant case, the Court concludes that the damages verdict reached by the jury is not so outrageous as to necessitate a new trial in this case, provided the pain and suffering award is reduced by remittitur. Indisputably, Plaintiff has suffered a serious knee injury which has caused him tremendous pain and which will preclude the pursuit of Plaintiff's chosen livelihood as a deckhand in the dredging business, as well as restrict certain other physical activities, such as running and heavy lifting. In addition, Plaintiff's condition will require that he undergo surgery in the future to replace his artificial knee.

On the other hand, there was no credible evidence showing that this impairment will prevent Plaintiff from pursuing his interest in a career as police dispatcher, bailiff, or electronics repairman. In contrast to Plaintiff's counsel's assertion that Plaintiff "faces a bleak life," the Court finds that Plaintiff is young, is not severely disfigured, and is capable of leading a fulfilling life, notwithstanding the restrictions noted above. Under these circumstances, there is no question that the jury award for pain and suffering exceeded the outer limit of the proof.

As set forth above, the jury awarded Plaintiff $750,000 for past pain and suffering and $500,000 for future pain and suffering. The Court concludes without hesitation that this award is excessive. In so doing, the Court does not minimize the pain Plaintiff has suffered and the frustration and disappointment he feels at no longer being able to engage in his chosen occupation and certain athletic activities. After careful consideration, however, the Court finds that the maximum damage award for past and future pain and suffering supported by the evidence is $500,000.00.

*Lost Income*

■ Defendant also urges the Court to set aside the jury's award of damages for lost income. The jury awarded $87,000 for lost past income and $472,000 for lost future income, the figures presented by Plaintiff's economist. Whether this award is supported by the evidence is a close question, since the basis for Plaintiff's economist's calculations as to total lost wages—the average weekly salary of $734.00—is based on the testimony of Plaintiff's witness Tamara Thomas, a vocational rehabilitation consultant who admittedly had no specific knowledge of the cyclical and seasonal nature of the dredging industry and had not taken into consideration the possibility that as a junior deckhand in the dredging industry, Plaintiff might have been laid off or employed fewer overtime hours than in the five-month period he spent in Defendant's employ prior to the accident.

Defendant's sole evidence on this issue was based upon an examination of W–2 forms of certain of its employees. Defendant's witness Brady testified that, pursuant to his examination of these forms, the average income earned from the Defendant by a dredger during 1986 through 1990 was approximately $29,000 per year. In formulating this average salary, Mr. Brady did not take into account income which might be earned by a dredger who sought work elsewhere when was laid off or had his hours reduced by Defendant.

The Court finds that this evidence laid a sufficient foundation to enable the trier of fact to make a fair and reasonable determination of the lost wages suffered by Plaintiff. Accordingly, the Court declines to set aside the jury's verdict on lost wages.

*Annuitist Testimony*

Defendant maintains that the Court erred in excluding the testimony of Defen-

---

scrutiny of punitive damage awards by both the trial and appellate court ensured meaningful and adequate review of a jury's punitive damage award.

Just as the discretion of the jury in awarding punitive damages is "not controlled by any very definite rules," — U.S. at ——, 111 S.Ct. at 1042, 113 L.Ed.2d at 19, a jury's assessment of the amount of damages that will compensate for an injured person's pain and suffering cannot be controlled by precise guidelines. It is clear, however, that the Court has the power and the obligation to see that this discretion is exercised within reasonable constraints.

dant's expert annuitist. The Court rejects Defendant's argument. *See Deakle v. John E. Graham & Sons,* 756 F.2d 821 (11th Cir.1985).

*Conclusion*

Defendant's Motion for New Trial is DENIED, conditioned upon Plaintiff's consenting to a remittitur in the pain and suffering award of damages to $500,000, for a total damage award of $1,147,000.00, less $14,544.00 previously paid by Defendant.[6] If Plaintiff declines to accept this remittitur, the Motion for New Trial is GRANTED.

Plaintiff shall advise the Clerk of the Court of his consent to the remittitur within 20 days from the entry of this Order or a new trial will be granted.

DONE AND ORDERED.