Ronald G. HALL, Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY COMPANY, Defendant.

Civ. A. No. 1:91–cv–1772–MHS.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 23, 1993.

Gary Franklin Easom, Beckham & McAliley, Jacksonville, FL, for plaintiff.

Edgar A. Neely, Jr., William C. Thompson, Neely & Player, Atlanta, GA, for defendant.

### ORDER

SHOOB, Senior District Judge.

On August 27, 1992, following a three-day trial before this Court, a jury awarded plaintiff $700,000 for injuries he sustained as the result of a train accident. Defendant contends that the trial contained a number of errors and asks the Court to enter judgment as a matter of law, grant a new trial, or order a remittitur.[1] The Court will address the issues raised by defendant in the two motions, and for the reasons set forth below, the Court denies the motion for new trial, denies the motion for a remittitur, and denies the motion for judgment as a matter of law.

1. Defendant filed several miscellaneous motions regarding the judgment which the Court will

## I. INTRODUCTION

On August 9, 1990, two trains owned and operated by defendant collided, killing three people and injuring others. Plaintiff, who was working on one of the trains, brought this action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, and the Boiler Inspection Act ("BIA"), 45 U.S.C. §§ 22–30, contending that he suffered post-traumatic stress disorder and a hip injury as a result of the collision. Plaintiff sought approximately $900,000 in damages for lost wages and pain and suffering. Defendant contended that plaintiff was contributorily negligent and that he could not link his injuries to the accident. Defendant also argued that plaintiff should not be allowed to recover for purely emotional injuries under FELA and that he could not prove his lost wages. Following the three-day trial, the jury found that defendant had been negligent under FELA but that defendant had no liability under the Boiler Inspection Act. The jury also found that plaintiff was not contributorily negligent and awarded plaintiff $700,000 in a general verdict.

## II. MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant moves the Court for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), contending that plaintiff failed to show that he was entitled to any damages under FELA. Defendant argues, first, that plaintiff failed to prove his hip injury was caused by the accident at issue and, second, that damages for post-traumatic stress disorder are not available under FELA. In the alternative, defendant argues that, as a matter of law, plaintiff is not entitled to damages for future lost wages. During the trial, defendant moved for judgment as a matter of law on these issues at the close of plaintiff's case and at the close of all the evidence. The Court denied both motions. As set forth below, the Court again denies the motion.

address at the end of this order.

## A. Standard for Judgment as a Matter of Law

■ Under Rule 50, a judgment as a matter of law [2] should be granted when "there is no legally sufficient evidentiary basis for a reasonable jury" to have found for the prevailing party. Fed.R.Civ.P. 50(a). In determining whether the evidence is "legally sufficient," the Court

> should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable [people] could not arrive at a contrary verdict, granting of the motions is proper.

*Rabun v. Kimberly–Clark Corp.*, 678 F.2d 1053, 1057 (11th Cir.1982) (quoting *King v. Exxon Co.*, 618 F.2d 1111, 1116 (5th Cir. 1980)). Basically, the Court must consider the evidence "without weighing the credibility of the witnesses or otherwise considering the weight of the evidence. . . ." *Id.* (quoting C. Wright & A. Miller, 9 *Federal Practice and Procedure*, § 2524, at 545–546 (1971)).

## B. Post–Traumatic Stress Disorder

■ The primary question at issue on defendant's motion for judgment as a matter of law is whether FELA permits recovery for injuries that defendant calls purely psychological or emotional. Defendant asserts that these injuries are not recoverable under FELA, and that, because plaintiff's injuries in this action are primarily psychological, the Court should enter judgment for defendant. As set forth below, however, the Court concludes that FELA permits recovery for plaintiff's psychological injuries.

FELA provides compensation for railroad employees who suffer injuries as a result of employer negligence. 45 U.S.C. § 51 (1988). FELA is a broad remedial statute, and the Supreme Court has liberally construed the statute in determining what injuries are compensable under FELA. *See Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). The Supreme Court has held that an employee can recover under FELA when the employer's negligence "played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). The Court, however, has declined to decide whether purely emotional injuries are recoverable under FELA, see *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 567, 107 S.Ct. 1410, 1416, 94 L.Ed.2d 563 (1987), advising courts instead to "glean guidance from common-law developments." *Id.* at 568, 107 S.Ct. at 1417. The Court stated that "whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." *Id.* While many states recognize a tort for the negligent infliction of emotional distress, they "vary in the degree of objective symptomatology the victim must demonstrate." *Id.* at 569–70, 107 S.Ct. at 1418.

■ The Eleventh Circuit has not addressed this issue under FELA, and while other courts agree that claims for negligent infliction of emotional distress are cognizable under FELA, "they are badly splintered as to the elements necessary to bring such a claim." *Gottshall v. Consol. Rail Corp.*, 988 F.2d 355, 361 (3d Cir.1993).[3] Many courts, however, have turned to the traditional common law rubric for guidance in addressing this question. *See, e.g., id.* at 362.; *Ray v. Consol. Rail Corp.*, 938 F.2d 704 (7th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 914, 116 L.Ed.2d 813 (1992); *Plaisance v. Texaco Inc.*, 937 F.2d 1004 (5th Cir.1991), *modified*, 966 F.2d 166 (1992) (en banc).

---

**2.** The 1991 amendments to the Federal Rules of Civil Procedure changed the terminology of Rule 50. Motions for directed verdict and for judgment notwithstanding verdict are now designated motions for judgment as a matter of law. C. Wright & A. Miller, 9 *Federal Practice and Procedure* § 2521 (Supp.1993).

**3.** The Court notes that in considering this question it is not limited to or bound by the law of the forum state. *Outten v. Nat'l R.R. Passenger Corp.*, 928 F.2d 74, 77 (3d Cir.1991).

This Court next discusses the common law approaches to claims for emotional injuries.

Generally, the common law uses four standards for assessing claims of negligent infliction of emotional distress: (1) physical injury or impact rule; (2) zone of danger; (3) bystander; and (4) full recovery. *Plaisance,* 937 F.2d at 1009. Traditionally, these rules were used to limit recovery for injuries "unconnected with actual or threatened impact ...," *Buell,* 480 U.S. at 569, n. 20, 107 S.Ct. at 1418, n. 20, and many states permit recovery on a showing that plaintiff suffered a physical injury or impact. A majority of jurisdictions now use the "zone of danger" rule, which permits recovery for emotional injuries resulting from witnessing physical harm to another *or* from fearing physical harm to oneself, provided that plaintiff was actually threatened by physical harm. *Gottshall,* 988 F.2d at 361. Jurisdictions permitting recovery for bystanders generally require the plaintiff to be present at the accident and closely related to the victim. *Id.* The full recovery approach permits a general negligence cause of action for the infliction of emotional distress. *Plaisance,* 937 F.2d at 1010.

Here plaintiff's emotional injuries resulted from his experience during a train wreck. He was in the second engine of the train when it collided with another train. The impact of the collision knocked plaintiff over, and he heard loud noises and "a whole lot of ruckus ... just like ... the whole world was coming down." (Tr. at 195.) After the collision, plaintiff was trapped in the car. The front end of the engine was torn off; there were fires in and around the cars blocking plaintiff's exit. He heard the conductor, who was killed in the collision, crying for help, but could not reach him to save him. He heard other crew members crying and moaning. After plaintiff made his way out of the train, he saw injured employees wandering around the woods, bleeding and crying. Fires were burning on both sides of the tracks. One car exploded, knocking plaintiff down. Plaintiff, along with other injured crew members, went to the hospital, where he was treated for minor injuries. At trial, he contended that the horror of the train wreck and his fear for his own safety caused his emotional injury.[4]

■ Even under a restrictive application of the common law rules, plaintiff would be entitled to recover. Plaintiff was clearly in the zone of danger, and his testimony shows that he reasonably feared for his own safety at the time. Also, regardless of whether plaintiff was able to link his hip injury to accident,[5] plaintiff suffered some physical impact and injury.[6] The Court finds that given these facts, FELA permits recovery for plaintiff's emotional injury.

Defendant argues that most circuits considering this issue have "expressed a great reluctance to recognize FELA liability for claims of psychological injury." All but one of the five cases cited by defendant, however, involve claims of emotional injuries resulting from work place stress or harassment. *Ray,* 938 F.2d at 705 (finding no cause of action absent actual or threatened impact); *Elliott v. Norfolk & W. Ry. Co.,* 910 F.2d 1224, 1229 (4th Cir.1990) (no recovery for emotional distress absent a showing of outrageous conduct ... was responding to supervisors' order); *Adams v. CSX Trans. Inc.,* 899 F.2d 536, 540 (6th Cir.1990) (denying recovery for purely emotional injury resulting from harassment when plaintiff failed to establish that defendant had breached its duty to maintain an "emotionally safe" workplace); *Moody v. Maine Central R.R.,* 823 F.2d 693, 694 (1st Cir.1987) (denying recovery where plaintiff failed to show that stress-related illnesses were caused by defendant railroad). *But see Outten,* 928 F.2d 74 (3d Cir.1991) (emphasizing plaintiff's distance from accident, court

---

4. Plaintiff's description of the accident and his experience is found at pages 196–200 of the trial transcript.

5. The Court finds below, however, that the evidence sufficiently links plaintiff's hip injury to the collision.

6. The impact need not be great, and recovery has been allowed when the impact was only a minor contact. W. Page Keeton et al., *Prosser & Keeton on Torts,* p. 363 (5th ed. 1984). A Georgia court once found the impact requirement satisfied when the defendant's horse "evacuated his bowels" in the plaintiff's lap. *Christy Bros. Circus v. Turnage,* 38 Ga.App. 581, 144 S.E. 680 (1928).

denied recovery for emotional injuries despite testimony that the plaintiff feared for his safety). Several of the cases also suggest that if a plaintiff was in the "zone of danger" or suffered impact, he may be able to recover for the negligent infliction of emotional distress. *See, e.g., Ray,* 938 F.2d at 705 ("We reiterate that the injury must result from physical contact or the threat of physical contact").

Defendant also argues that the rules set forth in two Fifth Circuit cases would prohibit plaintiff's recovery for emotional injuries in this action. In *Gaston v. Flowers Transportation,* 866 F.2d 816 (1989), the Fifth Circuit declined to find that FELA or its maritime companion, the Jones Act, permits recovery under the bystander theory.[7] In that case, the plaintiff sought to recover for the emotional injuries he suffered when he witnessed his half-brother's death. The Fifth Circuit analyzed the case under the "bystander" standard, which it defined as "an attempt by a crew member to recover damages for witnessing the death or injury of another crew member, *without significant injury or fear of injury to himself.*" *Id.* at 817 n. 1 (emphasis added). Since in *Gaston* there was no evidence that plaintiff ever feared for his own safety, *id.* at 819, the Court here concludes that *Gaston*'s holding would not prohibit recovery in this case. To the contrary, the analysis and dictum in *Gaston* suggest that a showing that plaintiff reasonably feared injury could support a claim for emotional injuries.

In *Plaisance,* the other Fifth Circuit case on which defendant relies, a panel found that FELA permits recovery for serious emotional injury alone without requiring a zone of danger test or one of the other common law tests.[8] *Plaisance,* 937 F.2d at 1010. The court also found, however, that the plaintiff failed to show that the injury complained of was the reasonably foreseeable result of the

alleged negligence. *Id.* Plaintiff was working on a barge when a pipeline underneath the barge ruptured, causing a fire and an explosion. No one was injured in the accident. Several witnesses, including plaintiff's psychiatrist, testified that they were surprised that the accident in question had caused such emotional distress. *Id.* at 1011.

Contrary to defendant's arguments, neither *Plaisance* nor *Gaston* precludes recovery in this instance. Unlike the plaintiff in *Gaston,* plaintiff in this case feared for his safety and was in danger. Unlike the plaintiff in *Plaisance,* plaintiff's emotional trauma was a reasonably foreseeable result of the train wreck. Given the broad remedial scope of FELA and the Supreme Court's direction to weigh the "the nature of the injury and the character of the tortious activity," *Buell,* 480 U.S. at 568, 107 S.Ct. at 1417, the Court finds, as a matter of law, that FELA permits plaintiff to recover for his post-traumatic stress disorder and that to grant defendant judgment as a matter of law denying recovery for these injuries would be error.

### C. Hip Injury

■ Defendant also seeks judgment as a matter of law on plaintiff's claim for damages arising out of his hip injury. Defendant argues that plaintiff failed to establish that his hip injury was caused by the accident at issue in this case. Although plaintiff testified to the hip injury, defendant argues that plaintiff's testimony was not sufficient in light of what defendant contends was the absence of any medical testimony on plaintiff's hip injury. The Court finds, however, that plaintiff presented enough evidence to show that he injured his hip during the train accident.

■■ As set forth above, FELA provides a broad standard of liability and an employee can recover under FELA when the employer's negligence "played any part, even the

---

**7.** Although *Gaston* is a Jones Act case, the standard of liability is the same as in the FELA, *id.* at 817, and *Gaston*'s analysis relies primarily on FELA cases.

**8.** In an *en banc* decision, the Fifth Circuit modified the panel's decision to state that the rule set forth in *Gaston,* prohibiting recovery for "purely

emotional injury resulting from actions not directed against plaintiff," is still the law of the circuit. *Plaisance v. Texaco, Inc.,* 966 F.2d 166, 169 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 604, 121 L.Ed.2d 540 (1992). The court left open, as did *Gaston,* whether a plaintiff could recover under a zone of danger theory. *Id.*

slightest, in producing the injury or death for which damages are sought." *Rogers,* 352 U.S. at 506, 77 S.Ct. at 448. Also, in considering a motion for judgment as a matter of law, the Court must not weigh the evidence or substitute its judgment for that of the jury. *Rabun,* 678 F.2d at 1057. Accordingly, the Court's task here is to view the evidence on plaintiff's hip injury in the light most favorable to plaintiff, to give plaintiff the benefit of all reasonable inferences from that evidence, and then to determine whether defendant's negligence played "even the slightest part" in plaintiff's hip injury.

Plaintiff testified that during the collision he was thrown around the cab of the engine. The day after the accident plaintiff reported to a physician that he had pain in his elbow, wrist, and hip. (Tr. at 201.) Later, when plaintiff went to the pain management center, a clinic recommended by defendant, he was referred to an orthopedic surgeon. Plaintiff's treating physician and psychiatrist at the pain management center, Dr. David Nichols, testified that plaintiff complained of "a good deal of steady pain in his hip" in the first twenty days or so after the accident. (Tr. at 130.) Dr. Nichols also testified that plaintiff was treated by an orthopedist and a physical therapist shortly after the accident. (Tr. at 132.) Answering a question posed by plaintiff's counsel, Dr. Nichols testified "with a reasonable degree of medical probability" that "there could be a relationship" between the accident and plaintiff's injury. (Tr. at 133.) He also testified that plaintiff received treatment for his hip injury for only about one month. A chiropractor who treated plaintiff for injuries he received in a 1991 automobile accident testified that plaintiff never complained of pain from the train accident or in his left hip.[9] (Tr. at 323.)

While, under FELA, the plaintiff is not required to present evidence that defendant's negligence was the proximate cause of plaintiff's injury, a medical expert must "be able to articulate that there is more than a mere possibility that a causal relationship exists between the defendant's negligence and the injury for which the plaintiff seeks damages." *Mayhew v. Bell S.S. Co.,* 917 F.2d 961, 963 (6th Cir.1990). Dr. Nichols' statement that he could say with a "reasonable degree of medical probability" that plaintiff's injury was related to the train wreck meets the standard in *Mayhew.* By contrast, in *Mayhew,* on which defendant relies, the medical expert did not testify with "any degree of medical certainty." *Id.* Viewing this testimony in light of the uncontested testimony that plaintiff had no hip problems before the train wreck and complained of hip pain within a day of the wreck, the Court finds that a reasonable juror could find that plaintiff injured his hip in the accident.[10]

### D.  *Future Lost Wages*

Finally, defendant also seeks a judgment as a matter of law on the issue of lost wages. Defendant argues that plaintiff failed to present evidence that plaintiff will sustain lost wages in the future and that "it is obvious" the jury's $700,000 verdict included damages for future lost wages. The Court will address this issue on defendant's motion for new trial or for remittitur.[11]

### III.  MOTION FOR NEW TRIAL OR REMITTITUR

Defendant seeks a new trial or remittitur on the grounds that the verdict was excessive and against the weight of the evidence, that

---

**9.**  The chiropractor also testified that plaintiff did not complete his chart and did not complete any medical history on the chart. (Tr. at 329.)

**10.**  Plaintiff contends that he offered evidence of his hip injury primarily to show physical impact and injury to permit recovery on his claim of post-traumatic stress disorder. Thus, he argues, he need not show that the injury was permanent. Because plaintiff did not present evidence tending to prove that plaintiff had suffered economic loss because of the hip injury and because the jury returned a general verdict, the Court finds

that plaintiff is not required to show that the injury is permanent.

**11.**  As discussed below, the standard for granting a motion for new trial is lower than that for granting a motion for judgment as a matter of law. Accordingly, because defendant has not met its burden of showing that a new trial should be granted, it has also failed to show that the Court should enter judgment as a matter of law on this issue.

the jury was biased by plaintiff's counsel's closing argument, that the Court improperly charged the jury, and that the Court erred in permitting certain testimony and evidence to be considered by the jury. The Court will first address whether a new trial is warranted on these issues and then will discuss defendant's motion for a remittitur.

### A. Motion for a New Trial

■ A court may grant a motion for new trial when the verdict is against the clear weight of the evidence, when the damages are excessive, or when the court determines that the trial was not fair. *Nat'l Car Rental System v. Better Monkey Grip Co.*, 511 F.2d 724, 730 (5th Cir.), *cert. denied*, 423 U.S. 986, 96 S.Ct. 394, 46 L.Ed.2d 303 (1975). A district court may grant a motion for a new trial if the jury verdict is contrary to "the great, not just greater, weight of the evidence." *Ard v. Southwest Forest Indus.*, 849 F.2d 517, 521 (11th Cir.1988) (citing *Watts v. Great Atl. and Pac. Tea Co.*, 842 F.2d 307, 310 (11th Cir.1988)). A court may also grant a motion for new trial upon a showing of certain substantial errors in the admission of evidence or the giving or refusal of instructions. C. Wright & A. Miller, 11 *Federal Practice and Procedure* § 2805, at 38 (1973). The Court concludes that a new trial is not warranted.

### 1. Excessive Verdict

Defendant contends that a new trial is necessary because the jury verdict was infected by bias and prejudice. To show the bias in the verdict, defendant argues that the verdict was excessive in light of the evidence and that plaintiff's closing argument inappropriately encouraged the jury to penalize defendant. For the reasons stated below the Court finds that these arguments do not support defendant's motion for a new trial.

■ In deciding whether the verdict was excessive, the Court must decide wheth-

er the amount of the jury award "shocks the conscience" of the court. *Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305, 1306 (11th Cir.1984). Generally, however, a court is *required* to order a new trial for an excessive verdict only if the liability finding was also the result of bias. *Evers v. Equifax Inc.*, 650 F.2d 793, 798 (5th Cir. Unit B 1981). When only the amount of the verdict and not the liability finding is the result of passion and prejudice, the Court may condition the denial of a motion for new trial on plaintiff's acceptance of a remittitur. *Warren v. Ford Motor Credit Co.*, 693 F.2d 1373, 1380 (11th Cir. 1982); *Lowe v. General Motors Corp.*, 624 F.2d 1373, 1383 (5th Cir.1980); *Braun v. Soldier of Fortune Magazine*, 757 F.Supp. 1325, 1329 (M.D.Ala.1991), *aff'd* 968 F.2d 1110, *cert. denied*, —— U.S. ——, 113 S.Ct. 1028, 122 L.Ed.2d 173 (1993).

Defendant does not attack the overall liability determination and, in fact, conceded negligence during trial, focusing instead on plaintiff's injuries and slightly on plaintiff's contributory negligence.[12] (Tr. at 398.) Under FELA, if the employer's negligence "played any part, even the slightest, in producing the injury or death for which damages are sought," the employer is liable. *Rogers*, 352 U.S. at 506, 77 S.Ct. at 448. Furthermore, defendant does not attack the jury's finding on contributory negligence. Because defendant's general attacks on the verdict as biased go only to the excessiveness of the damages, the Court will address them in considering the remittitur.[13]

### 2. Closing Argument

■ Defendant also contends that plaintiff's closing argument prejudiced the jury by asking the jury to penalize defendant when punitive damages were not an issue before the jury. Defendant identifies eight statements in plaintiff's closing argument in which plaintiff's counsel disparaged defendant's tactics during the case and criticized the railroad for dismissing plaintiff.[14] Only

---

**12.** Defendant contested liability on plaintiff's claim under the Boiler Inspection Act. Because the jury found for defendant on that claim, it is not at issue on this motion.

**13.** *See supra* section II. B.

**14.** Defendant also identifies a statement in plaintiff's rebuttal in which defendant contends plaintiff's counsel intentionally misled the jury by accusing defense counsel of lying. Defendant exaggerates the nature of the statements made by plaintiff's counsel and fails to show error or

one statement, however, comes close to asking the jury to penalize defendant:

> They [defendant] are just looking for redemption ... It is your job, ladies and gentlemen, to tell this railroad that you are not going to allow it, and you tell them that by fully compensating Mr. Hall for all the injuries that he has sustained as a result of this incident.

(Tr. 389.) [15]

These statements do not rise to the level of misconduct necessary for granting a new trial. The standard for granting a new trial based on improper conduct by counsel, including improper closing argument, is "whether the conduct was such as to impair gravely the calm and dispassionate consideration of the case by the jury." *Bankatlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1474 (11th Cir.1992), *cert. denied* ___ U.S. ___, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993). While the Court noted at trial that plaintiff's counsel's argument may have gone a little "beyond the pale," (Tr. at 422) defendant has not shown that these statements gravely impaired "the calm and dispassionate consideration of the case ..." *Id.*

Indeed, in most cases—including those cited by defendant—where courts ordered a new trial because of improper closing argument, the conduct was far more egregious than that of plaintiff's counsel in this case. Here plaintiff's counsel did not persistently refer to defendant's size and power. *See Gonzalez v. Volvo of America Corp.*, 734 F.2d 1221, 1225–26 (7th Cir.1984) (ordering new trial where counsel repeatedly referred to defendant's corporate size, portrayed it as preying on innocent consumers); *City of Cleveland v. Peter Kiewet Sons' Co.*, 624 F.2d 749, 756 (6th Cir.1980) (noting counsel's "pervasive misconduct" and continuous references to the size and power of defendant). Nor did plaintiff's counsel's argument focus on a legal argument prohibited by a court ruling. *See McWhorter v. City of Birmingham*, 906 F.2d 674, 676–77 (11th Cir.1990); *Evers v.*

*Equifax, Inc.*, 650 F.2d at 797. Finally, plaintiff's counsel did not explicitly argue for punitive damages or indirectly seek such damages by asking the jury to "send a message." *Vanskike v. ACF Indus. Inc.*, 665 F.2d 188, 209 (8th Cir.1981) (counsel argued explicitly for punitive damages although they were not available); *CSX Transp. v. Levant*, 262 Ga. 313, 314, 417 S.E.2d 320 (1992) (counsel asks jury to use damages as a deterrent and describes defendant as the "big railroad" against plaintiff, "a labor man").

The conduct of plaintiff's counsel in this action is distinguishable from the conduct that has prompted the courts cited above to grant new trials in other cases. In light of the case law, the Court finds that while plaintiff's counsel's argument may have edged toward impropriety, his argument did not reach the level of impropriety required for the Court to grant a new trial.

### 3. Errors in the Court's Instructions to the Jury

Defendant also contends that the Court erred in giving certain instructions to the jury and omitting others. While a new trial is appropriate for some errors in jury instructions, defendant must show prejudice and error before the judgment should be disturbed. *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir. 1985); *Hunt v. Liberty Lobby*, 720 F.2d 631, 647 (11th Cir.1983). To determine whether there was prejudice the Court should query whether the jury, considering the instruction as a whole, was misled. *Aero Int'l v. United States Fire Ins. Co.*, 713 F.2d 1106, 1113 (5th Cir.1983). While defendant contests several of the instructions given by the Court and the Court's refusal to give several others, defendant fails to show that the jury—considering the charge as a whole—was misled, and defendant fails to show prejudice.

Defendant first objects to the Court's instructions on contributory negli-

---

prejudice in them. The Court also notes that defendant did not explicitly object to these statements during or after the closing.

15. Plaintiff's counsel also argued that plaintiff lost his dignity when he was dismissed, and "only you [the jury] can restore that dignity, because the railroad surely isn't going to restore it." (Tr. 393.)

gence [16] and assumption of risk,[17] arguing that these charges misrepresented the evidence before the jury because defendant did not raise these defenses during trial. The Court finds that these instructions did not misrepresent the evidence. Although defendant did not explicitly raise these defenses as charged,[18] the Court finds, as it did in the charge conference, that such instructions were necessary to cure any potential confusion on the part of the jury. *Almendarez v. Atchison, Topeka & Santa Fe Ry. Co.*, 426 F.2d 1095, 1098 (5th Cir.1970) (instruction may be appropriate if jury might improperly consider assumption of risk). Furthermore, the Court gave defendant's proposed instruction on plaintiff's negligence, which clearly and adequately set forth defendant's contentions as to plaintiff's negligence, and instructed the jury to reduce the verdict in proportion to the amount of negligence attributable to plaintiff. (Tr. at 435, 437.) The Court finds that its instructions on contributory negligence and assumption of risk (Tr. at 435) were not erroneous and were not prejudicial to defendant.

■ Defendant also objects to the Court's refusal to give defendant's proposed charges eight and nine which instructed the jury to find that defendant was responsible only for injures traceable to its negligence and that plaintiff bears the burden of proving which damages and injuries resulted from defendant's negligence. Instead, the Court gave a charge of its own:

[Y]ou are not to award damages for any injury or condition from which plaintiff may have suffered, or may be suffering, unless it has been established by a preponderance of the evidence in the case that such injury or condition was proximately caused by the accident in question.

(Tr. at 440–41.) The charge was taken verbatim from E. Devitt, C. Blackmar, and M. Wolff, *Federal Jury Practice and Instructions* § 85.15 (4th ed. 1987). Defendant raises vague objections that the Court's charge "did not go far enough" (Def.'s Mem. for New Trial at 17), but fails to show the prejudice or legal error in the instruction that would give rise to a new trial.

### 4. Plaintiff's Lost Future Earnings

Defendant objects on the issue of plaintiff's lost future earnings for two reasons: one, that the Court erred when it permitted plaintiff to testify about his past railroad earnings as evidence of earning capacity; two, that plaintiff failed to present any evidence of lost future earnings on which a jury could base a damage award. The Court finds that it did not err in permitting plaintiff to present evidence of his railroad earnings and that plaintiff presented enough evidence of lost future earnings to create a jury issue.[19]

■ Along with all the surviving crew members involved in the accident, plaintiff was dismissed from the railroad shortly after the accident. At the beginning of the trial, the Court found that plaintiff's dismissal

---

**16.** The instruction reads in part: "You may not find contributory negligence on the part of the plaintiff, however, simply because he has acceded to the request or direction of a responsible representative of his employer that he work at a dangerous job or in a dangerous place or under unsafe conditions." (Tr. at 435.)

**17.** The instruction, which quotes verbatim from the statute, reads in part: "Section IV of the Federal Employers' Liability Act provides, in part: 'In any action brought against any common carrier to recover damages for injuries to any of its employees such employees shall not be held to have assumed the risk of his employment in any case where such injury resulted in whole or in part from the negligence of any officers, ...'" (Tr. at 435.)

**18.** The Court notes that defendant argued throughout the case that plaintiff was contributorily negligent on the ground that he failed to

keep a proper lookout. Defendant objects to the language instructing the jury not to find plaintiff contributorily negligent if he merely followed orders to work under unsafe conditions. Plaintiff, however, testified that he did not comply with certain rules because he was following instructions from the engineer and conductor. (Tr. at 213.)

**19.** Defendant also objects to the Court's instructions to the jury on future lost wages and present value on the ground that plaintiff presented no evidence of lost wages. Those objections are addressed in the Court's holding on this issue. The Court also notes that both instructions include cautionary language that such damages should be considered only if plaintiff has proved them. (Tr. at 441, 443.)

could not be litigated in this FELA action and granted defendant's motion in limine to preclude plaintiff from testifying about the wages he would have earned had he worked for the railroad after the accident. (Tr. at 26.) The Court stated, however, that plaintiff would be permitted to testify as to what his past railroad wages were as evidence of his earning capacity before he incurred his injuries. Defendant did not object. (Tr. at 26.) [20] Defendant then objected during plaintiff's testimony on his salary, and the Court stated that it would permit the testimony but would "charge the jury ... to cover the issue." (Tr. at 178.) [21]

Defendant contends that because plaintiff was dismissed from the railroad, he cannot recover lost railroad wages. In the rule stated in *Kulavic v. Chicago & Illinois Midland Railway Co.*, 760 F.Supp. 137 (C.D.Ill. 1991), and adopted by this Court in granting defendant's motion in limine, the plaintiff was prohibited from presenting evidence of wages lost because of his dismissal from the railroad. In *Kulavic*, however, the plaintiff did not argue that his injuries prevented him from working; he sought to recover wages lost due to dismissal and not injury. Here plaintiff argued that his injuries prevent him from holding a job like the one he held at the time of his injury. Plaintiff here did not seek to recover for wages lost due to his dismissal; instead, he used his railroad earnings as a measure of his earning capacity at the time of the accident. Accordingly, the Court finds that plaintiff's testimony on this issue did not violate the Court's order and was not in error.

■ Defendant also argues that plaintiff did not present sufficient evidence of lost future earnings, contending that plaintiff's testimony about what he once earned for the railroad does not properly establish earning capacity for a jury award of lost future earnings. Defendant argues that plaintiff presented no evidence showing that he could have continued to earn that much money in the future, had he not been injured, and that plaintiff presented no evidence that his injuries prevented him from performing certain kinds of work.

Plaintiff testified that his emotional condition would prevent him from working around large machines or noisy machines, (Tr. at 216), which would in effect prohibit him from performing the same or similar duties he had performed on the railroad. He also testified that if he were not injured he would look for work in a machine shop. (Tr. at 216.) Plaintiff, who is a high school graduate and had worked for the railroad most of his adult life, testified that the best jobs he could get after his injury were delivery jobs.

■ The quantum of proof required to show the amount of damages is lower than that required to show the fact of damages. *American Air Filter Co. v. McNichol*, 527 F.2d 1297 (3d Cir.1975). Also, pre-injury earnings may provide a proper basis for calculating lost future wages. *Deakle v. John E. Graham & Sons*, 756 F.2d 821, 829–30 (11th Cir.1985). The lost income is "composed of yearly differences between what [plaintiff] would have earned had he not been injured and what his forecasted actual earnings will be, given his injuries." *Id.*

Plaintiff's testimony on his pre-injury income for the railroad provided the jury with enough evidence for the jury to conclude, using its practical experience, what plaintiff could have earned had he not been injured. While the Court cannot discern exactly what

**20.** The Court stated: "Of course, it is up to the jury as to what weight they want to give to that, but [plaintiff] can certainly state this is the kind of earnings he has earned in the past." Tr. at 26.

**21.** The Court charged the jury: "You should consider the following elements of damage to the extent you find them proved by a preponderance of the evidence and not others: one, past lost wage; two, future lost wages—now this would not include past lost or future railroad wages. Do you understand?" (Tr. at 441.)

"Plaintiff's discharge from his employment with defendant is exclusively governed by the Railway Labor Act and cannot be considered by you in this FELA lawsuit. You cannot award damages, even if you believe some may exist, that stem from or may have been caused by plaintiff's dismissal from employment. In other words, members of the jury, you should not consider whether [plaintiff] was properly or improperly discharged by the railroad.... Do you understand that? That is not the issue before you." (Tr. at 440.)

the jury concluded were plaintiff's expected earnings, given the testimony on his injuries, plaintiff produced enough evidence on his injuries, past earnings, and current earnings from which the jury could conclude that plaintiff has lost future wages. Accordingly, a new trial would not be appropriate on this issue.

### 5. Mortality Tables

■ Defendant also objects to the Court's admission of mortality tables into evidence. Defendant argues that this evidentiary decision was an error because plaintiff failed to show that his injury was permanent. While the Court agrees that the evidence on plaintiff's hip injury was slim, the Court finds that plaintiff presented sufficient evidence for a jury to conclude that his emotional injuries were permanent.[22]

Plaintiff's psychiatrist testified that in his 1992 session with plaintiff, about two years after the accident, plaintiff still suffered anxiety when discussing the accident and still needed weekly treatment.[23] (Tr. at 144–45.) The psychiatrist testified that plaintiff had, at the time of trial, significant psychiatric problems. (Tr. at 142.) He also testified that it is difficult to predict whether plaintiff would recover from his post-traumatic stress disorder because the illness is like a seed, and once the seed is "planted . . . that potential remains there. . . . [A]ny number of things could bring those symptoms to the forefront." (Tr. at 140.) According to the doctor, plaintiff would likely need continued treatment and "certainly on an as-needed basis. . . ." (Tr. at 145.) [24]

Plaintiff also testified that he continues to have trouble sleeping, (Tr. at 205), and that it is difficult for him to discuss what happened during the accident. He testified that the sound of machines and trains makes him nervous. (Tr. at 216.) Plaintiff stated, "It's just something that happened in my life that I believe will be with me for the rest of my life, but I try to deal with it the best I can." (Tr. at 219.) Plaintiff's son, a high school student, testified that before the accident his father coached football, fished often, and spent time with him and his cousins, but his father no longer takes part in these activities. (Tr. at 236.) Plaintiff's son also testified that, two years after the accident, his father often paces in the night and comes into his room, unable to sleep. (Tr. at 238.)

The Court finds that plaintiff's testimony of his continued suffering and Dr. Nichols' testimony that plaintiff continued to be traumatized by the accident presented enough evidence for the permanency of plaintiff's injury to be decided by the jury. Accordingly, defendant is not entitled to a new trial because plaintiff failed to present evidence that injuries were permanent.

### 6. Testimony on Extra Negligence

■ Defendant also objects to the Court's permitting witness G.L. Fischer to testify about possible "additional negligence" on the part of defendant. Fischer, an engineer who fell asleep just before the collision, testified about several things he thought the railroad did which might have contributed to his falling asleep and thus failing to stop the train.

Defendant contends that because it conceded negligence any evidence about why the engineer fell asleep was irrelevant and prejudicial. Plaintiff responds that under *Sears v. Southern Pac. Co.*, 313 F.2d 498, 501 (9th Cir.1963), it was entitled to submit evidence of additional negligence because FELA has comparative negligence provisions. The Court finds that this evidence was not irrelevant. Defendant failed to present any authority showing that such evidence is irrelevant when defendant, in a comparative negli-

---

22. Defendant also objects to the jury instruction on the mortality tables. The Court, however, finds that the instruction cured any prejudice that resulted from admitting the tables if the admission was an error. The instruction reads, in pertinent part: "[I]f a preponderance of the evidence shows the plaintiff has been permanently injured, and that is for you to decide, of course, you may consider his life expectancy." (Tr. at 443.)

23. Plaintiff had stopped treatment in Spring 1991 after he lost his job with defendant and could no longer afford the $140 hourly fee. (Tr. at 146.)

24. The Court also notes that during the testimony plaintiff was visibly shaken as he discussed the train accident.

gence case, has admitted liability. Defendant also failed to show that it was prejudiced by the admission of this evidence. Defendant admitted liability and its case that plaintiff was contributorily negligent was not particularly strong. Thus, it is unlikely that this evidence, even if erroneously admitted, swayed the jury.

### B. Motion for Remittitur

■ Finally, defendant asks the Court to order a remittitur. Defendant argues that the jury's general verdict of $700,000 "greatly exceeds plaintiff's actual evidence of damages" and is the result of jury bias. Defendant relies primarily on the size of the verdict to show bias.[25] The Court finds that the jury verdict, while large, is not excessive and should not be disturbed.

A jury award is excessive if it "shocks the conscience of the court." *Jackson*, 742 F.2d at 1306. Because the jury awarded a general verdict, it is particularly difficult for the Court to assess whether the verdict is excessive and the result of bias. The Court, however, finds it helpful to analyze the potential areas of award in determining whether the verdict "shocks the conscience."

The Court instructed the jury that it would award damages for (1) past lost wages, (2) future lost earnings, (3) pain and suffering, (4) loss of enjoyment, and (4) medical expenses. (Tr. at 441.) Plaintiff's counsel argued that the jury should award $50,000 in past lost wages and $400,000 in future lost wages.[26] Plaintiff then argued for an overall verdict of $900,000, asking for about $500,000 in pain and suffering damages.

On the other hand, defendant contends that plaintiff, who is working two jobs, is earning about $32,000 a year,[27] while his average railroad wage for the previous five years was $41,300.[28] According to defendant's calculation, plaintiff's lost wages come to $190,000 at most, and at present value are worth about $150,000. Defendant does not provide a calculation for lost past wages. The general damages then for pain and suffering and loss of enjoyment of life would be more than $500,000, which defendant contends is excessive.

■ The Court finds that the jury could have calculated plaintiff's future lost wages using his salary from one new full-time job at about $20,000 a year. Plaintiff's duty to mitigate his damages by resuming employment requires only a "reasonable" effort. *See* E. Devitt, C. Blackmar, and M. Wolff, *Federal Jury Practice and Instructions* § 85.13 (4th ed. 1987). Plaintiff is not required to work two jobs for the rest of his life. Accordingly, if the jury took this into account in exercising their "practical" knowledge when calculating future damages, it would not be an error.

■ The jury's award for pain and suffering could have ranged from $500,000 to about $300,000.[29] Awards for pain and suffering are fact specific. "While pain and suffering is, to a large degree, not susceptible to monetary quantification, and the jury thus has especially broad leeway ...," *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1427 (5th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989), courts often find it helpful to review awards in similar cases. *See Markland v. Norfolk Dredging Com.*, 772 F.Supp. 1241, 1243 n. 4 (M.D.Fla.1991).

---

25. Defendant also argues that the jury was prejudiced by plaintiff's closing argument. The Court addresses that argument in denying defendant's motion for new trial. *See supra* pp. 1579–80.

26. Plaintiff's counsel calculated that plaintiff is "losing" $20,000 a year because his average railroad income was $45,000 and he was making about $21,000 in one delivery job. Given a work life of another 20 years, plaintiff's lost wages would come to about $400,000, under plaintiff's calculation.

27. Defendant calculated plaintiff's current income using plaintiff's yearly income from his two delivery jobs, while plaintiff apparently used the income from only one position.

28. Defendant also objects to using these numbers to calculate damages and uses them primarily as examples.

29. The Court, for the purpose of evaluating the size of the verdict, is considering the range of possible pain and suffering awards based on the plaintiff's and defendant's broad estimations of lost wages.

For example, in *Markland,* the jury awarded a deckhand $750,000 for past pain and suffering and $500,000 for future pain and suffering. While it is unclear from the decision how plaintiff injured his knee, the court found that the knee injury caused him pain and that plaintiff was restricted from certain activities he enjoyed in the past. The Court remitted the pain and suffering award to $500,000. *Id.* at 1244. Also, in *Earl v. Bouchard Transportation Co.,* 917 F.2d 1320 (2d Cir.1990), the court awarded a deckhand suffering from an ankle and elbow injury $380,000 in pain and suffering damages. Other juries in other courts, of course, have awarded much lower damages for injuries. *See, e.g., Oliveri v. Delta Steamship Lines, Inc.,* 849 F.2d 742 (2d Cir.1988) (Jones Act plaintiff with serious foot injury awarded $50,000 for pain and suffering).

As recounted above, plaintiff here testified to a gruesome event on the night of the accident. He was trapped in a wrecked train engine while fires burned nearby and he heard people moaning. When he was able to free himself, he saw fellow crew members wandering the woods and crying. He attempted to rescue the engineer who was killed in the accident and then tried, at risk to himself, to call for help. Plaintiff also has continued to suffer psychological stress from the accident, and, according to his testimony and his son's testimony, has lost substantial enjoyment in life. How a jury would quantify these injuries is difficult, if not impossible, to estimate. Under these circumstances, however, an award of $700,000 for lost wages and for pain and suffering does not shock the Court's conscience. Accordingly, the Court denies defendant's motion for remittitur.

## IV. CONCLUSION

In summary, the Court DENIES defendant's motion for new trial, or, in the alternative, to alter or amend judgment [# 39] and DENIES defendant's motion for judgment as a matter of law regarding the case as a whole, and alternatively, regarding future lost wages [# 40].

Defendant also filed several miscellaneous motions which the Court now addresses. The Court denies as untimely filed defendant's motions filed before judgment was entered on the docket [# 33, # 34, # 35, # 36]. The Court GRANTS defendant's motion to alter or amend judgment regarding the rate of interest [# 38]. The Court GRANTS *nunc pro tunc* defendant's motion to stay execution of judgment pending the Court's ruling on the motions for new trial and judgment as a matter of law [# 37–1], but DENIES defendant's motion for a stay pending appeal [# 37–2]. Defendant may refile the motion for a stay if it appeals.

The Court DIRECTS the clerk to amend the judgment [# 32] by changing the interest rate to 3.13 percent. The Court also DIRECTS the clerk to strike the taxing of costs according to plaintiff's first bill of costs [# 43]; plaintiff's amended bill of costs [# 50] should be taxed.

IT IS SO ORDERED.